IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

ELHAM SATAKI
c/o 2000 Pennsylvania Avenue, NW
Washington, DC 20006

    Plaintiff,

vs.

CASE NO.

BROADCASTING BOARD OF
GOVERNORS
330 Independence Ave., SW
Washington, DC 20237

and

BLANQUITA COLLUM
Governor
330 Independence Ave., SW
Washington, DC 20237

and

JOAQUIN F. BLAYA
Governor
330 Independence Ave., SW
Washington, DC 20237

and

D. JEFFREY HIRSCHBERG
Governor
330 Independence Ave., SW
Washington, DC 20237

and

STEVEN J. SIMMONS
Governor
330 Independence Ave., SW
Washington, DC 20237

and

HILLARY RODHAM CLINTON
As Secretary of State Ex-Officio Member of the Board of Governors
330 Independence Ave., SW
Washington, DC 20237

and

JANICE H. BRAMBILLA
Chief of Staff to the Governors
330 Independence Ave., SW
Washington, DC 20237

and

PAUL KOLLMER-DORSEY
Acting General Counsel to the Board of Governors
330 Independence Avenue, SW
Washington, D.C. 20237

and

ALEX BELIDA
Acting Chief
Persian News Service/Voice of America
Broadcasting Board of Governors
330 Independence Avenue, NW
Washington, DC 20237

and

ALI SAJJEDI
Senior Manager
Persian News Service/Voice of America
Broadcasting Board of Governors
330 Independence Avenue NW
Washington, DC 20237

and

SUSAN JACKSON
Supervisor/ Executive Producer
Persian News Service/Voice of America
Broadcasting Board of Governors

330 Independence Avenue, NW
Washington, DC 20237

and

JOY WAGNER
Executive Producer
Persian News Service/Voice of America
Broadcasting Board of Governors
330 Independence Avenue, NW
Washington, DC 20237

and

SUSAN SHAND
Executive Producer
Persian News Network/Voice of America
Broadcasting Board of Governors
330 Independence Avenue, NW
Washington, DC 20237

and

MICHELLE STEWART
Supervisor
Human Resources
Persian News Service/Voice of America
Broadcasting Board of Governors
330 Independence Avenue NW
Washington, DC 20237

     Defendants.


## COMPLAINT


Plaintiff, Elham (aka "Ellie") Sataki, sues all of the above named Defendants in their

official and individual capacities and alleges as follows:

JURISDICTION AND VENUE

1. The Broadcasting Board of Governors (BBG) and the individual defendants named above and herein are entrusted with the responsibility of promoting the fundamental principals of democracy and freedom to people around the world. These Defendants, each and every one of them, willfully and maliciously, acting in concert, individually and jointly and severally, used the power of their positions to cover-up and further sexual harassment perpetrated by a BBG employee in the Persian News Network (PNN) of Voice of America (VOA) (which the Office of Personnel Management has ranked the worst managed agency in government)(Exhibit 1), Mehdi Fallahati, and then willfully and maliciously retaliated against Plaintiff, Ms. Elham Sataki, when she complained of the sexual harassment. These malicious and wilfull acts of the Defendants were designed to harm Plaintiff, and did severly harm Plaintiff Ms. Sataki, based on her national origin, which is Persian, and also because of her personal views concerning Iranian freedom, in order to attempt to silence her, and set an example for other dissatisified VOA/PNN employees and contractors, from complaining to appropriate authorities about the reporting and general corruption at VOA/PNN. Attached as Exhibit 2 is a letter from Congress detailing the mismanagement and serious reporting problems at VOA/PNN, and the perversion of its mission while under the control of Defendants, which is incorporated herein by reference. Indeed, the obvious bias in favor of the Islamic Regime in Iran, and the trashing of the United States by VOA/PNN, has become so acute and obvious to its viewers in Iran and elsewhere that a huge number of postings on the internet and Facebook, among other public

sources of communication, now call the network 'The Islamic News Network.' This
is what has prompted, in large part, Congress to commence an investigation of
Defendants and other management. Congress, employees of VOA/PNN and
observers and viewers have been forced to ask the question 'who are the managers
of VOA/PNN really working for?' The malicious and wilfull acts of Defendants
have violated Plaintiff Sataki's rights of free speech, equal protection, property and
right to be secure in her person, and due process under the First, Fourteenth, Fourth,
and Fifth Amendments of the U.S. Constitution, as more fully plead below. This
lawsuit, arising under 28 U.S.C. 1331 and other federal statutory laws as set forth
below, seeks redress in the form of declaratory and injunctive relief (from
Defendant BBG) and monetary relief (from all other Defendants, individually and
jointly and severally) for the injuries and damages plead herein.

### THE PARTIES

2.   Plaintiff, Elham Sataki, is a United States citizen, of Persian origin, and an
accomplished, reknowned  and the most popular television reporter/anchor for
VOA/PNN in the District of Columbia headquarters of VOA/ PNN. By all accounts,
based on viewer feedback in Iran and elsewhere in the world, Plaintiff Sataki was at  all
material times perceived as the star of PNN/VOA, based not only on her talent but
unparalleled grace, articulate reporting and beauty, among other attributes particularly
desirable for television anchors and reporters. Prior to joining VOA/PNN in the summer
of 2007, Ms. Sataki had acquired significant experience and an exemplary reputation for
quality in television reporting and anchoring shows concerning Iran. Plaintiff Sataki was
well-respected and highly sought after for her television skills and appearance,

particularly in the world of Persian broadcasting. She was thus hired by VOA/PNN for her expertise and excellent reputation and skill and beauty, as well as her Farsi language ability, wherein she speaks excellent literal Farsi and also dialects. As a result of this expertise, excellent reputation and skill and beauty, after other co-host positions, she was assigned by VOA/PNN to be co-anchor on the news show "Straight Talk." The co-host assigned to this show was at all material times was Mehdi Falahati.

3. Falahati, who is of Iranian origin and thus speaks and writes Farsi, was at all material times assigned to be co-anchor on "Straight Talk" with Ms. Sataki. Unlike Ms. Sataki, who is single, he is married.

4. Prior to becoming the co-host of 'Straight Talk,' Plaintiff had been showcased as a host and anchor on the show 'Late Edition,' and after that 'Today's Woman,' where she was both reporter and anchor. While working as an anchor and reporter on 'Today's Woman,' Plaintiff was berated and verbally attacked by Defendant Joy Wagner, a Senior Executive Producer, for allegedly obtaining the assistance of another co-worker in editing a package for the show. The verbal attack, which was malicous and illegal in and of itself, was the result of false information provided by Susan Shand, another Executive Producer, who was doing the bidding of another anchor at VOA/PNN who felt competitive with Plaintiff and wanted to cost her Ms. Sataki job as anchor and co-host at VOA/PNN. As a result of this malicious verbal attack, Plaintiff suffered a severe bleeding ulcer, vomited huge amounts of blood, and had to be rushed to the emergency room of a local hospital. A doctor's report dated September 8, 2008, diagnosed the medical condition of Plaintiff as severe upper gastrointestinal bleeding and migraines obviously caused by the stress resulting from the actions of Defendants Joy Wagner and Susan Shand. See Exhibit 3.

4. On or about March 1, 2009, Plaintiff Sataki began receiving unwanted advances from Falahati, who had been assigned to be co-host with Plaintiff, Sataki, on the show 'Straight Talk.' These advances were not just verbal, but physical, wherein Falahati, without Plaintiff Sataki's consent, in in or about May 2009, in a threatening manner grabbed at and fondled Plaintiff's bra straps and breast areas, on at least two occasions, in a public area in a confined area behind her desk at work. When Plaintiff Sataki strenuously reacted in great fear, Falahati responded derisively, in a sick voice, by laughing, saying 'Don't worry, nobody saw it!' These unwanted advances – which are particularly inappropriate in the Persian culture -- and assaults and batteries, which placed Plaintiff Sataki in fear of immediate serious bodily injury, continued and when Plaintiff Sataki complained to her supervisors, the named Defendants, at VOA/PNN, and Falahati learned of these complaints, he (and the Defendants) continued to seek to have Plaintiff Sataki removed from her co-anchor position on "Straight Talk" at VOA/PNN for his having rejected him and now complaining to authorities.

5. Specifically, Falahati threatened Plaintiff Sataki with the loss of her anchor position if she did not submit to his unwelcome advances, assaults and batteries, and remain quiet about them, and when this did not work, beginning in or about July of 2009, he began and perpetrated a continous and daily campaign which included but was not limited to publicly disparaging Plaintiff's language ability in Farsi, falsely claiming to English speaking supervisors such as Susan Jackson and Alex Belida, who do not speak or write Farsi, that she could not competently speak the language. He also manufactured false complaints from viewers about Plaintiff Sataki (some of which, on

information and belief, continue to this day to be on display publicly on Facebook and other public internet sites), and gave and published these false complaints to Plaintiff's supervisors and other VOA/PNN officials, including but not limited to Alex Belida, Susan Jackson, Ali Sajjedi, Benjamin Jonas, Joy Wagner and others at VOA such as Michelle Stewart, as well as the others Defendants.  Falahati also told and published to Plaitiff's Sataki's supervisors that she only got her job because she is beautiful – suggesting that she lacks intelligence and ability – and thus she lacked the skills to be a television anchor.  Fallahati also berated Plaintiff to her face, and in the presence of other VOA/PNN employees with this talk. As a result of Falahati's actions, Plaintiff Sataki lost her job as a co-anchor of "Straight Talk," and has been relegated to what are in effect menial chores at VOA/PNN for a television star of her quality, reputation and professional delivery and classy,  dignified and beautiful appearance. She has been demeaned and humiliated. And, importantly, Fallahati, in concert with the Defendants herein, attempted to remove Plaintiff Sataki from her anchor position and drive her from VOA/PNN.

6. Plaintiff Sataki is known by all of the Defendants to hold strong personal views that VOA/PNN should be more pro-American and supportive of  the freedom movement in Iran. Plaintiff Sataki personally believes in 'Regime Change.' But Defendants do not hold these views and have mismanaged and intentionally propogated anti-American propaganda and supported the Islamic Regime in Iran through their control of broadcast content. This is the reason that Congress had been critical of and is currently investigating the managment of VOA/PNN and Plaintiff Sataki has cooperated with Congress in educating it to the problems at VOA/PNN. As a result of Plaintiff Sataki's

personal beliefs, and what is perceived to be her having 'blown the whistle' on
Defendants for mismanaging and misusing VOA/PNN to promote anti-American and
anti-Iranian freedom movement rhetoric, Defendants, each and every one of them,
sought to retaliate against Plaintiff Sataki when she raised with them the sexual
harassment of Fallahati. Rather than taking any meaningful action to redress this sexual
harassment, instead they took actions designed to destroy Plaintiff's emotional and
physical health and drive her from VOA/PNN, as they viewed her as a threat to their
complete control of the network and their power to do as they please. Defendants also
set out to destroy Plaintiff Sataki to send a message to other employees and contractors
of VOA/PNN who also have complaints against the Defendants that they should not
exercise their constitutional and other rights or they too would be destroyed. These acts
by the Defendants, each and every one of them, jointly and severally and acting
individually and in concert, include but are not limited to:

a. Berating and disparaging Plaintiff Sataki's excellent Farsi language capability and
using this falsity as a pretext to remove her as an anchor from 'Straight Talk' or for that
matter any show;

b. Refusing to grant Plaintiff Sataki advance sick leave when she was hospitalized for a
bleeding ulcer and then telling her falsely and derisively that advance sick leave is only
used for 'cancer or terminal' patient cases;

c. Relegating Plaintiff Sataki to menial chores rather than allowing her to broadcast
important events and anchor a show, based on her expertise and ability;

d. Creating and spreading false rumors about Plaintiff Sataki's alleged personal life
before she joined VOA/PNN;

e. Disparaging Plaintiff Sataki's reputation and ability by telling her and others at VOA/PNN that she only got her position because she is beautiful;

f. Refusing to grant Plaintiff Sataki a 'reasonable medical accomodation' by allowing her to be detailed to the Los Angeles office of VOA/PNN when the continual retaliation and a hostile workplace environment resulted in a complete nervous breakdown, caused Plaintiff Sataki to become suicidal, and caused her to be mentally and physically disabled. Instead, the unreasonable 'reasonable medical accomodation' imposed on Plaintiff was to disparage her expertise and attempt to remove her from PNN to the Central News Bureau, Middle Eastern Desk, which does not broadcast in Farsi and deals primarily with Arabic news and issues. Plaintiff, as a Persian woman, is not Arabic and does not speak Arabic and is trained to be an international broadcaster in Farsi. Persians are obviously not Arabs and are ethnically and culturally quite different. She was hired to work at VOA/PNN, not the Central News Service, Middle Eastern Desk.To make matters worse, sending Plaintiff Sataki to the Central News Bureau, Middle Eastern Desk, does not remove her from the sexual predator, Fallahati, nor the retaliating manager/supervisor Defendants,  because it is adjacent to PNN in the VOA building and the studio which is in the Central News Bureau is the same one that is used by PNN personnel. Thus, Defendants and Fallahati would have to traverse areas in close proximity to Plaintiff Sataki, notwithstanding common exits and entrances from the building. Because of this Plaintiff Sataki's physicians and psychologists attested to the need to have her work out of the Los Angeles office, so she can continue under their medical care (Ms. Sataki is from Los Angeles), and where Ms. Sataki can recuperate from her disabilities by being among her 'support group.' Attached as Exhibit 3 are some

of these medical evaluations. As a result, the failure to grant Plaintiff Sataki a 'reasonable medical accomodation' by allowing her to work out of the Los Angeles office, which is at the seat of the biggest and most successful and prominent Persian community outside of Iran, and which is a beacon of freedom and achievement for Persians, constitutes further retaliation againt Plaintiff Sataki.

g. After Plaintiff Sataki was forced to file suit against Fallahati in the Superior Court for the District of Columbia, Defendants, through the Defendant Acting General Counsel, Paul Kollmer-Dorsey, whose actions have furthered and exaccerbated the severe retaliation against Plaintiff, provided false information to the Justice Department and caused it to file a Westfall Certification in order to defend the sexual predator, Fallahati, and then removed the case unlawfully to federal court to try to slow the case down and cover up the harassment and retaliation by illegally and scandalously using taxpayer rnonies to control and defend Fallahati, the sexual predator. In addition, after Plaintiff, and her Union, were forced to file a complaint with the Inspector General of the State Department for the retaliation and cover-up by Mr. Kollmer-Dorsey and the other Defendants (which include the individidual Board of Governors themselves, and in particular Governor Blanquita Collum, who at all times have been advised of the sexual harassment and retaliation on behalf of and as the agent of all of the individual Governors, but have sanctioned, ratified, approved of and furthered it nevertheless), which cover-up was and is still being orchestrated by the Acting General Counsel on behalf of himself and the other Defendants, Defendants then finally commenced a :fraudulent internal investigation of the sexual harassment and retaliation charges, and proceeded to harass, intimidate, tamper with and obstruct key material witnesses to the

sexual harassment. As just one example, another woman, Mahmonir Rahimi, who is a very accomplished television international journalist and reporter in her own right and who works as well at VOA/PNN, an who was also repeatedly and incessantly sexually harassed by Fallahati and who has come forward, was told by Defendant Sajjedi, just a day or so after she came forward to testify, that 'Be careful you are not being used (by Plaintiff Sataki)'. This was not the first time that Defendant Sajjedi, who is now has been rewarded with a senior management position and a higher GS grade (from GS-13 to GS-14) by non-Persian management for his illegal efforts, has intimidated and attempted to obstruct a legitimate investigation of the sexual harassment and retaliation charges of Plaintiff. Previously, Defendant Sajjedi, who has been working in concert with all of the other Defendants, participated, without any reason to do so, as he was not then a supervisor (or even a manager) of Plaintiff, in a meeting to discuss the sexual harassment charges with Plaintiff and her Union representative, President Tim Shamble. Despite objections that Defendant Sajjedi not attend the meeting by Plaintiff and the Union, he did so anyway at the direction of Defendant Susan Jackson, and then he proceeded to falsely browbeat the Plaintiff for her alleged poor Farsi language ability as part of the retaliation effort. He also falsely stated to Plaintiff in a threatening and aggressive manner that 'you are not doing a good job! How long are you going to blame it on a co-worker (i.e., Fallahati).' Defendant Sajjedi, while Persian, was doing the bidding of the non-Persian Defendants to curry favor with them to attain his promotion. Not coincidentally, he is also a close friend of Fallahati. These acts are unlawful, criminal and constitute in addition to workplace retaliation, obstruction of justice.

h. Defendants, acting in concert through the illegal actions of Defendants Kollmer-Dorsey and Michelle Stewart, a supervisor in Human Resources at VOA/PNN have illegally withheld the last two paychecks of Plaintiff Sataki, while she is on medical leave for her disablilities, in order to harass, retaliate and severely harm her and to attempt to drive her from the agency and make an example of her for other employees and contractors who may dare complain about the management of VOA/PNN. Defendant Stewart has admitted to this unlawful retaliation on behalf of her herself and the other Defendants, telling the Union President Tim Shamble, 'I am not going to do her (Plaintiff Sataki) any special favors,' when Mr. Shamble inquired why Plaintiff was not being paid the monies due to her. The refusal and failure to pay Plaintiff Sataki denied her the ability to pay for her medical care (co-pays) and other necessities of life, intentionally and maliciously increasing greatly the the already severe retaliation and attendant anxiety and distress leveled against her. See Exhibit 4.

i. Defendants, acting in concert through Defendant the Acting General Counsel Kollmer-Dorsey, have also harassed, intimidated Plaintiff's legal counsel, by detainting him when he attempted to legally enter the VOA/PNN building to see the Union President, Mr. Shamble, restricting his access to Plaintiff's Union. This was done through the improper use of VOA/PNN security, who detained and harassed, admittedly at Defendant Kollmer-Dorsey's direction, Plaintiff's lawyer as if he were a terrorist and would not allow him free access to the Union office in the VOA/PNN building. This conduct constitutes not only additional retaliation, it is in violation of federal labor laws and standards, as well as Plaintiff's and her lawyer's civil rights. See Exhibit 4.

j. Unlawfully withholding Plaintiff Sataki's personnel file, which was lawfully requested under the Privacy Act, as well as other documents pertaining to her and giving her evaluations that were falsely couched to try to cover up the retaliation by all of the Defendants. See Exhibit 4.

k. Other acts of retaliation not specifically set forth herein and which will be uncovered in discovery and when Plaintiff Sataki's personnel file and other related document are produced under her Privacy Act request, as set forth below.

6.    Fallahati's actions have continued to the present, as he has stated to Plaintiff Sataki and others publicly that he is free to do whatever he wants. This has been the attitude of all of the Defendants, as Plaintiff has tried to resolve these matters to no avail. Defendants, each and every one of them, have sanctioned and furthered Fallahati's actions, and are now having the Justice Department defend him in a private lawsuit against him brought by Ms. Sataki for assault and battery, false light, intentional infliction of emotional distress and other common law causes of action. This taxpayer financed defense, which is illegal and scandalous, is intended to control Fallahati so that he does not publicly implicate the Defendants in the illegal retaliation designed to destroy Plaintiff Sataki and drive her from VOA/PNN for exercising her constitutional rights of free speech, due process, equal protection, rights to be secure on her person and property and other legal rights. See Exhibit 4.

8.    As a result of Defendants' actions, each and every one of them, jointly and severally, Plaintiff Sataki has suffered extremely severe mental depression, extremely severe anxiety, thoughts of suicide, severe migraines, constant nervousness, lack of

equilibrium, a bleeding ulcer, severe neck and back pains, weight gain, loss of self

esteem and confidence, has withdrawn from friends, relatives, acquaintances, social

occasions and consortium, and other serious mental and physical ailments and she has

had to go on anti-depressants, tranquilizers, sleeping pills and other strong medications,

which further impair her ability to function personally and at work. Plaintiff Sataki has

thus had to seek significant medical treatments, both physiologically and

psychologically.

9. Plaintiff Sataki has also suffered chronic loss of sleep, and other severe physical

pains and ailments, as a result of the tortious acts of Defendant Falahati as set forth

above. See Exhibit 3.

10. Plaintiff Sataki has also suffered loss of reputation, good will, business opportunity,

pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses, and other damages attendant to and

as a result of Defendants' actions, each and every one of them, jointly and severally.

11. These acts by Defendants are part of a pattern of unlawful conduct in violation of the

U.S. Constitution and other federal and state laws. See a related case styled Melodi

Navab-Safavi v. Broadcasting Board of Governors et. Al., Civil Action No. 1:08-cv-

01225-ESH (D.D.C.)(Individual Members of Board of Governors Sued In Their

Individual Capacities for Alleged Violations of the U.S. Constitutional Rights of Plaintiff

Who Also Sought to Exercise Rights of Free Speech, a VOA/PNN Contractor. See Order

of September 9, 2009 Wherein this Court Denied Goverment's Motion to Dismiss

Individual Governors and Other Management For Alleged Individual Liability).

## VIOLATIONS OF LAW

## COUNT ONE

## INFRINGEMENT OF PLAINTIFF'S RIGHT TO FREEDOM OF SPEECH
## IN VIOLATION OF OF THE FIRST AMENDMENT

10. Plaintiff Sataki reavers and realleges the facts contained in paragraphs 1 through 10 of this Complaint as if fully set forth herein.

11. Defendants' actions, individually and in concert, jointly and severally, infringed upon Plaintiff Sataki's right to freedom of speech in violation of the First Amendment to the U.S. Constitution, by retaliating against her for her personal political views, her speech intended to make VOA/PNN adhere to its mission to promote the interests of the United States and promote freedom in Iran, and the exercise of her free speech rights both at VOA/PNN, before Congress and elsewhere. See Exhibit 2.

12. Defendants' conduct, each and every one of them, was willful, malicious, and taken in reckless disregard for Plaintiff Sataki's rights and was intended to, and did, cause severe damage to her as set forth above.

## COUNT II

## INFRINGEMENT OF PLAINTIFF'S FIFTH AMENDMENT RIGHT TO DUE PROCESS

13. Plaintiff Sataki realleges and reavers paragraphs 1 through 12 of this complaint as if fully stated herein.

14. Defendants' actions, individually and in concert, jointly and severally, infringed upon Plaintiff Sataki's Fifth Amendment rights, by not only illegally covering up and denying her relief for sexual harassment by Fallahati, but to the contrary by also retaliating against her to try to keep her quiet, destroy her mentally and physically and to force her out of PNN/VOA. In addition Plaintiff has been denied due process by virtue of Defendants' tampering with, threats to, intimidation and obstruction of justice of material witnesses, such as another woman who has come forward at PNN/VOA who has also been sexually harassed by Fallahati, as well as other unlawful unconstitutional acts.

15. Defendants' conduct was willful, malicious and taken in reckless disregard of Plaintiff Sataki's rights to due process, and was intended, and did, cause her severe damage as set forth above.

## COUNT III

### INFRINGEMENT OF PLAINTIFF'S RIGHT TO EQUAL PROTECTION IN VIOLATION OF THE FOURTEENTH AMENDMENT

16. Plaintiff Sataki reallages and reavers paragraphs 1 through 15 of the complaint as if fully set forth herein.

17. Defendants' actions, individually and in concert, jointly and severally, infringed upon Plaintiff Sataki's right to equal protection under the law in violation of the Fourteenth Amendment to the Constitution by virtue of her being discriminated against due to her sex and national origin, which is Persian woman aka Iranian-American woman. This discrimination manifested itself in ways which are set forth in detail above, as Defendants

have furthered the sexual harassment and furthered retaliation against Plaintiff for her having exercised her constitutional rights.

18. Defendants' conduct was willful, malicious and taken in reckless disregard of Plaintiff Sataki's rights, and was intended to, and did, cause her severe damage.

## COUNT IV

## INRINGEMENT OF PLAINTIFF'S RIGHT TO PROPERTY UNDER THE FOURTH AMENDMENT.

19. Plaintiff Sataki realleges and reavers the facts set forth in paragraphs 1 through 18 of the complaint as if fully set forth herein.

20. Defendants, individually and jointly and severally, acting in concert, infringed upon Plaintiff Sataki's right to to be secure in her person as well as property in violation of the Fourth Amendment of the U.S. Constitution insofar as they furthered and allowed Fallahati to violate her right to be secure in her person, as she was physically molested, assaulted, battered, searched, seized, and falsely imprisoned by Fallahati's grabbing and fondling her bra straps at work in a confined area in an enclosed cubicle at her desk where she could not escape these acts, and Defendants then ratified and furthered these actions through their own actions, and Defendants also confiscated unlawfully her paychecks and money in one of many acts to retaliate against her for Plaintiff having exercised her constitutional right to complain and to silence and destroy Plaintiff and drive her from her position.

22. Defendants' conduct was wilful, malicious and taken in reckless disregard of Plaintiff Sataki's rights, and was intended to, and did, cause severe harm to her.

## COUNT V

### VIOLATION OF THE REHABILITATION ACT OF 1973

23. Plaintiff Sataki realleges and reavers paragraphs 1 through 22 of the complaint as if fully stated herein.

24. Section 504 of the Rehabilitation Act of 1973, prohibits discrimination on the basis of physical or mental disability and provides that federal employees with disability are to be provided 'reasonable medical accomodation.' 29 U.S.C. 791 et.seq.

25. Plaintiff Sataki has unlawfully been denied the 'reasonable medical accomodation' to be detailed to the VOA/PNN Los Angeles office in order that she can work out of that office after her recovery from being disabled by Defendants. Los Angeles is where Plaintiff's health care providers are situated, including but not limited to her psychologist, psychiatrist, internist and gastrointerologist, and Los Angeles is where her support group is located, and Los Angeles is a logical place for her to benefit the reporting of VOA/PNN on issues involving Iran and Persian culture, as it is the second largest Persian city in the world, houses the American successful and influential entertainment industry, which is the nation's biggest export and presents a good image of U.S. values and what freedom would bring for Iran. Indeed, Defendants have admitted that Los Angeles is crucial to reporting on Persian news, as it is the seat of Persian culture in the United States.

26. Rather than granting Plaintiff a 'reasonable medical accomodation' to allow her to get
well and work in a place which is not hostile, away from Fallahati and the retaliating
Defendants, Defendants have cruelly sought to unlawfully to keep her in the hostile
workplace environment of VOA/PNN Washington, so she can be continue to be damaged
and destroyed mentally and physically and to send a message to other employees never to
complain or question the actions of management. Plaintiff Sataki has been driven to a
state of contemplated suicide. See Exhibit 3 – Medical Evaluations.

27. Defendants' actions have been wilful, malcious and reckless and intended to severely
damage Plaintiff Sataki for exercising her rights. These damages are set forth above.

28. Plaintiff prays for compensatory and punitive damages and temporary, preliminary
and permament injunctive relief ordering that she be able to return to work as an
anchor/host in the Los Angeles office of VOA/PNN once she is able to return to work
from her disabilities, attorneys fees and costs, and such other relief as this court deems
just and proper. See Exhibit 4.

## COUNT VI

## VIOLATION OF THE PRIVACY ACT

28. Plaintiff Sataki realleges and reavers paragraphs 1 through 27 of this complaint as if
fully set forth herein.

29. Plaintiff Sataki lawfully filled out and presented to Defendant BBG the forms of
VOA/PNN to obtain her personnel file and any and all documents and things, including
email, that refer or relate to her, but Defendant BBG has wilfully and in bad faith failed

and refused to timely produce these documents in violation of the Privacy Act, dragging

out production in furtherance of the cover-up of and retaliation by the Defendants.

30. The failure to timely produce the requested documents was wilful and in bad faith,

and is intended by Defendants to further their cover-up of the unlawful acts perpetrated

against Plaintiff Sataki and to severely harm her further.

31. Wherefore Plaintiff Sataki prays that the court order that the documents, including

email, be produced forthwith and that she be awarded attorneys fees and costs.


### PRAYER ON ALL COUNTS


Plaintiff Sataki prays as follows against each of the Defendants, jointly and severally:

1. Compensatory and actual damages in excess of $150, 000,000 USD;

2. Punitive damages in an amount to be determined by the jury;

3. Temporary and preliminary and permanent injunctive relief to order that Plaintiff
   be given 'reasonable medical accomodation' by being detailed and installed
   permanently in the Los Angeles office of VOA/PNN;

4. Pay Plaintiff Sataki immediately her paychecks and the money that is due to her
   and which has been withheld unlawfully, with interest;

5. All documents from Plaintiff's personnel file and those that refer or relate to her
   be immediately produced;

6. Referral to the U.S. Attorney for criminal investigation of witness tampering,
   obstruction of justice and misuse of taxpayer monies, as well as to the District of
   Columbia Bar and other applicable state bars and applicable federal ethics

agencies, including but not limited to the Office of Government Ethics and the

Inspector General of the State Department, concerning the professional

misconduct of Defendant Acting General Counsel Kollmer-Dorsey;

7. Attorneys fees and costs;

8. Such other relief as this court deems just and proper.


Plaintiff Sataki demands trial by jury of all counts and issues so triable.


Respectfully submitted,

Larry Klayman, Esq.

D.C. Bar No. 334581

KLAYMAN LAW FIRM

2000 Pennsylvania Avenue, N.W., Suite 345

Washington, D.C. 20006


Tel: 310 595 0800

leklayman@yahoo.com

Exhibit 1

# The Washington Post

FRIDAY, MARCH 13, 2009
**FEDERAL DIARY**

*Joe Davidson*

## And Now for the Laggards in the OPM Survey

When officials at the Office of Personnel Management announced the results of their 2008 Federal Human Capital Survey in January, they only released the names of agencies that took the top 10 spots in each of four categories: leadership and knowledge management, results oriented performance culture, talent management and job satisfaction.

The complete list, however, includes 37 agencies in each category. By listing only the top 10, OPM officials avoided embarrassing bosses at agencies crawling along the bottom.

The Federal Diary, of course, suffers from no such compunction. We were able to obtain the complete lists. Below, we have printed the agencies that are at the top and bottom of each and their rankings for 2008 and 2006.

OPM surveys the federal workforce every two years. More than 210,000 participated in 2008.

**ON WASHINGTONPOST.COM**



Read Joe Davidson's blog at washingtonpost.com/fedpage and Federal Career Talk at washingtonpost.com/wp-srv/community/groups/front.html.

Here's how to interpret the findings:
■ The leadership index indicates how highly, or not, employees of an agency regard their leaders.
■ The performance index indicates how much workers in an agency believe it promotes improvements in processes, products and services.
■ The talent index indicates the

degree to which staffers think an agency has the talent needed to achieve its goals.
■ The job satisfaction index is my favorite because it indicates how satisfied employees are with their jobs. That's key.

Here's a tip: Check out the progress made by the Court Services and Offender Supervision Agency. It's like a small, unknown college that comes out of nowhere to beat the big basketball powerhouses during March Madness.

*Contact Joe Davidson at federaldiary@washpost.com.*

## Winners and Losers

*Because of limited space, agencies in the middle of each list are not printed below. You can find the complete listing at www.washingtonpost.com/wp-srv/politics/documents/leadership_and_knowledge_index.pdf*

### Leadership and Knowledge Management Index

| Agency | 2008 Rank | 2006 Rank |
|---|---|---|
| Nuclear Regulatory Commission | 1 | 1 |
| National Science Foundation | 2 | 3 |
| Federal Energy Regulatory Commission | 3 | 5 |
| Federal Trade Commission | 4 | 4 |
| National Aeronautics and Space Administration | 5 | 2 |
| Office of Management and Budget | 6 | 8 |
| Department of State | 7 | 10 |
| General Services Administration | 8 | 7 |
| Equal Employment Opportunity Commission | 30 | 25 |
| Department of Housing and Urban Development | 31 | 26 |
| National Credit Union Administration | 32 | 16 |
| National Archives and Records Administration | 33 | 31 |
| Department of the Interior | 34 | 32 |
| Department of Homeland Security | 35 | 35 |
| Department of Transportation | 36 | 34 |
| Broadcasting Board of Governors | 37 | 36 |

### Performance Index

| Agency | 2008 Rank | 2006 Rank |
|---|---|---|
| National Science Foundation | 1 | 1 |
| Nuclear Regulatory Commission | 2 | 4 |
| Federal Trade Commission | 3 | 2 |
| National Aeronautics and Space Administration | 4 | 3 |
| Federal Energy Regulatory Commission | 5 | 8 |
| Office of Management and Budget | 6 | 6 |
| Court Services and Offender Supervision Agency | 7 | 11 |
| Department of Commerce | 8 | 10 |
| Department of the Interior | 30 | 29 |
| Department of Agriculture | 31 | 26 |
| Department of Veterans Affairs | 32 | 33 |
| Department of Housing and Urban Development | 33 | 24 |
| National Labor Relations Board | 34 | 22 |
| Department of Homeland Security | 35 | 36 |
| Department of Transportation | 36 | 34 |
| Broadcasting Board of Governors | 37 | 35 |

### Talent Index

| Agency | 2008 Rank | 2006 Rank |
|---|---|---|
| Nuclear Regulatory Commission | 1 | 1 |
| National Science Foundation | 2 | 4 |
| National Aeronautics and Space Administration | 3 | 3 |
| Court Services and Offender Supervision Agency | 4 | 9 |
| Federal Trade Commission | 5 | 5 |
| Office of Management and Budget | 6 | 6 |
| National Credit Union Administration | 7 | 2 |
| Federal Energy Regulatory Commission | 8 | 7 |
| Department of Labor | 30 | 25 |
| Small Business Administration | 31 | 35 |
| Railroad Retirement Board | 32 | 30 |
| Department of Transportation | 33 | 29 |
| Department of Homeland Security | 34 | 33 |
| Equal Employment Opportunity Commission | 35 | 32 |
| Department of Housing and Urban Development | 36 | 34 |
| Broadcasting Board of Governors | 37 | 36 |

### Job Satisfaction Index

| Agency | 2008 Rank | 2006 Rank |
|---|---|---|
| Nuclear Regulatory Commission | 1 | 2 |
| Office of Management and Budget | 2 | 1 |
| National Science Foundation | 3 | 4 |
| National Aeronautics and Space Administration | 4 | 3 |
| Department of State | 5 | 6 |
| U.S. Agency for International Development | 6 | 9 |
| Social Security Administration | 7 | 8 |
| Court Services and Offender Supervision Agency | 8 | 29 |
| Department of Housing and Urban Development | 30 | 30 |
| Department of Education | 31 | 33 |
| National Archives and Records Administration | 32 | 31 |
| Department of Homeland Security | 33 | 36 |
| National Labor Relations Board | 34 | 19 |
| Department of Transportation | 35 | 27 |
| Broadcasting Board of Governors | 36 | 35 |
| Federal Communications Commission | 37 | n/a [1] |

[1] — The FCC did not participate in the 2006 survey.

Exhibit 2

# Congress of the United States

Washington DC, 20515

March 17, 2010

The President
The White House
Washington, D.C. 20500

Dear Mr. President,

We are encouraged by your powerful statement during your first State of the Union
Address: "As Iran's leaders continue to ignore their obligations, there should be no doubt: they,
too, will face growing consequences." However, while economic sanctions and international
isolation may be necessary, we believe the greatest threat to the Iranian regime will come from
the liberation of its own people. We ask you to support Iranian dissidents fighting for freedom
and democracy in Iran.

The United States must stand by the thousands of Iranians who have stood defiantly
against the regime. We must call for the release of all political activists and demand the
cessation of torture, rape and other human rights violations. As the leader of the free world, the
United States has a moral obligation to support the courageous men and women in Iran who are
demanding freedom and democracy at risk of arrest, imprisonment, and execution. Iran's
dissidents will not stop fighting. We should not stop fighting for them.

In addition, the freedom movement has relied heavily on the internet to inform the
Iranian people, organize protests, and update the international community about the regime's
violence against its own people. We should assist Iranian dissidents by helping them to
circumvent state censorship through access to relevant internet technologies.

Finally, we implore you to investigate the anti-American rhetoric reported to be coming
from Voice of America -- Persian. The apparent lack of oversight regarding the context of
VOA-Persian broadcasting -- an American-taxpayer-funded program -- has ironically harmed the
plight of the dissidents by propagating anti-American sentiment throughout the region.

The United States, through principled public and material support, can help the Iranian
people to achieve self-determination.

We appreciate your consideration of our request.

Sincerely,

Trent Franks
Member of Congress

# Congress of the United States
Washington DC, 20515
Iran Letter Signer's List

1. Trent Franks (AZ)
2. Robert Aderholt (AL)
3. W. Todd Akin (MO)
4. Rodney Alexander (LA)
5. Michele Bachmann (MN)
6. Roscoe Bartlett (MD)
7. Joe Barton (TX)
8. Gus Bilirakis (FL)
9. Rob Bishop (UT)
10. Marsha Blackburn (TN)
11. Roy Blunt (MO)
12. John Boehner (OH)
13. Jo Bonner (AL)
14. Dan Burton (IN)
15. Ken Calvert (CA)
16. John Campbell (CA)
17. Jason Chaffetz (UT)
18. Howard Coble (NC)
19. Mike Coffman (CO)
20. Mike Conaway (TX)
21. Tom Cole (OK)
22. John Culberson (TX)
23. Jeff Fortenberry (NE)
24. Virginia Foxx (NC)
25. Phil Gingrey (GA)
26. Louie Gohmert (TX)
27. Bob Goodlatte (VA)
28. Scott Garrett (NJ)
29. Sam Graves (MO)
30. Parker Griffith (AL)
31. Wally Herger (CA)
32. Peter Hoekstra (MI)
33. Bob Inglis (SC)
34. Lynn Jenkins (KS)
35. Jim Jordan (OH)
36. Steve King (IA)
37. Mark Kirk (IL)
38. Jack Kingston (GA)
39. Doug Lamborn (CO)
40. Robert Latta (OH)
41. Cynthia Lummis (WY)
42. Connie Mack (FL)
43. Mary Fallin (OK)

# Congress of the United States

Washington DC, 20515

| | |
|---|---|
| 44. | Michael T. McCaul (TX) |
| 45. | Tom McClintock (CA) |
| 46. | Thaddeus McCotter (MI) |
| 47. | "Buck" McKeon (CA) |
| 48. | Jerry Moran (KS) |
| 49. | Sue Myrick (NC) |
| 50. | Randy Neugebauer (TX) |
| 51. | Pete Olson (TX) |
| 52. | Joe Pitts (PA) |
| 53. | Bill Posey (FL) |
| 54. | Tom Price (GA) |
| 55. | Ileana Ros-Lehtinen (FL) |
| 56. | Dave Reichert (WA) |
| 57. | Dana Rohrabacher (CA) |
| 58. | McMorris Rodgers (WA) |
| 59. | Edward Royce (CA) |
| 60. | Paul Ryan (WI) |
| 61. | Steve Scalise (LA) |
| 62. | Jean Schmidt (OH) |
| 63. | Aaron Schock (IL) |
| 64. | John Shadegg (AZ) |
| 65. | John Shimkus (IL) |
| 66. | Lamar Smith (TX) |
| 67. | Todd Tiahrt (KS) |
| 68. | Lynn A. Westmoreland (GA) |
| 69. | Joe Wilson (SC) |

Exhibit 3

Virginia Hospital Center
1701 North George Mason Drive
Suite 415
Arlington, VA 22205
(703) 717 4400

Date: September 8, 2008

RE: Ms. Sataki

To Whom It May Concern:

Please be advised that MS. Elham Sataki was hospitalized at Virginia
Hospital Center from September 5th through September 8th, 2008. She has
given us permission to disclose her diagnosis which was severe upper
gastrointestinal bleed caused by stress and use of NSAID medication which
she took for severe headaches. If you have further questions please do not
hesitate to contact us.

Sincere regards,

Dr. W. Akbary

## Arlene T. Aviera, Ph.D.

CLINICAL PSYCHOLOGY
License # PSY 9562
NPI 1225252505

Date  February 24, 2010
Name of Patient:  Elham Sataki

Diagnosis  Axis I     Major Depressive Disorder  296.23
                          Severe without Psychotic features
                Axis II   No Diagnosis  V71.09
                Axis III  Migraine headaches, History of Bleeding Ulcer with recurring
                          Pain requiring medical evaluation
                Axis IV  Sexual Harassment, Loss of Anchor Position, Threat of Job
                          Loss
                Axis V   GAF = 50  (current)

Ms Sataki is currently suffering from a Major Depressive Disorder and is disabled by this condition and unable to work. Her symptoms are severe (depressed mood, constant crying, exhaustion, hypersomnia, withdrawal, lack of interest and participation in daily activities and feelings of hopelessness, shame and overwhelming loss), and she is currently at risk for suicide. Fortunately, she is open, honest, credible, motivated and responsive to psychological treatment and is a good candidate for psychological intervention. She has chosen to work with me and it is imperative that she be given the opportunity to access psychological treatment on a regular basis (two to three times a week) in face-to-face sessions. In cases of sexual harassment and subsequent retaliation, the establishment of trust with the treating therapist is essential to her progress. An important factor is her choice of therapist and the establishment of a therapeutic relationship upon which can rely. Also significant to the healing process is a complete removal of the environment in which the sexual harassment occurred as constant exposure to the same environment only serves to reactivate the psychological injury. Ms. Sataki also has a support system in Los Angeles which would be helpful to her in her healing process. Once she is able to return to work, it is my professional opinion that she would function at a very high level in Los Angeles, especially given her history here and the feeling of comfort she derives from that.

In order to prevent further psychological deterioration, urgent intervention is necessary. I would recommend that she be placed on disability for a period of 4-6 weeks, at which time her progress in treatment can be re-evaluated. She is also currently taking anti-depressant medication (Citalapram 40 mg and Mirtazapine 30 mg) along with Migraine medication (Sumatriptan, prn). Recent complaints of ongoing stomach pain and a history of a bleeding ulcer suggests an urgent need for a current medical evaluation of this condition.

Arlene T. Aviera, Ph.D.

1849 SAWTELLE BLVD. • SUITE 660 • LOS ANGELES, CA 90025 • PHONE (310) 477-8751 • FAX (310) 966-1537

## Arlene T. Aviera, Ph.D.

CLINICAL PSYCHOLOGY
License # PSY 9562
NPI 1225252505

Date March 18, 2010
Name of Patient: Elham Sataki

Diagnosis  Axis I  Major Depressive Disorder  296.23
                   Severe without Psychotic features
                   Anxiety Disorder 300.00
           Axis II  No Diagnosis  V71.09
           Axis III  Migraine headaches, History of Bleeding Ulcer, Gastritis
           Axis IV  Sexual Harassment and Retaliation, Loss of Anchor Position,
                    Threat of Job Loss
           Axis V  GAF = 50  (current)

This report serves as a follow–up to my first evaluation dated February 24, 2010.
Ongoing psychotherapeutic treatment with Ms. Sataki has resulted in some marginal
improvement; a psychotherapeutic relationship has been established, treatment is
underway and there has been some positive shift in her depressed mood. She is clearly
someone who will benefit from psychotherapy as she is motivated, willing to discuss
difficult feelings openly and honestly, and is capable of insight. At the same time, as time
has passed and her job status remains unresolved, anxiety symptoms have intensified and
further debilitated her ability to function. What has affected her more deeply is not only
the sexual harassment, but the ensuing retaliation by her superiors at Voice of America.
Her co-anchor job with Voice of America has been the singular most important part of
her life. There is nothing she holds more dear and she was willing to put everything into
this work. The threat of losing the one thing she cares most about in her life has caused a
full blown anxiety disorder to emerge. Emergency medical intervention was required as
she was visibly shaking and could not sleep or eat for several days. An additional
medicine that specifically treats anxiety (Lorazepam), has been added to her medication
regime and has been helpful in reducing these intolerable levels of anxiety. (She
continues taking the antidepressant medications detailed in the previous report.)

Ms. Sataki has continued to work with me in psychological treatment on a regular basis
(two to three times a week) in face-to-face sessions. As mentioned previously, in cases of
sexual harassment and subsequent retaliation, the establishment of trust with the treating
therapist is essential to her progress. An important factor is her choice of therapist and the
establishment of a therapeutic relationship upon which can rely. Also significant to the
healing process is a complete removal of the environment in which the sexual harassment
occurred as constant exposure to the same environment only serves to reactivate the
psychological injury. Ms. Sataki also has a support system in Los Angeles which she has
begun to access that will be essential to her healing process. Once she is able to return to
work, it is my professional opinion that she would function at a very high level in Los
Angeles, especially given her history here and the feeling of comfort she derives from
that.

1849 SAWTELLE BLVD. • SUITE 660 • LOS ANGELES, CA 90025 • PHONE (310) 477-8751 • FAX (310) 966-1337

In order to prevent further psychological deterioration, ongoing intervention is necessary. I would recommend that she continue on disability for at least an additional eight weeks.At which time her progress in treatment can be re-evaluated.

Arlene T. Aviera, Ph.D.
Licensed Clinical Psychologist
PSY 9562

# Beverly Hills Endoscopy, LLC

### 465 N Roxbury Drive, Penthouse Suite
### Beverly Hills , CA 90210

03/16/2010

Elham Sataki
MRN-JS680

Dear Mrs. Elham Sataki:

You have undergone a Esophagogastroduodenoscopy procedure performed by Dr. James Sherman. **The summary conclusions and images from the procedure include the following:**

**Summary:**

- Normal esophagus.
- Moderately severe chronic gastritis found in the body of the stomach and antrum (535.10). Biopsy taken.
- Normal duodenum.



normal-duodenum                    ●gastritis-stomach-antrum                    ●gastritis-stomach-body of the stomach

Please note the potential after effects documented in the attached Discharge Instructions sheet that you reviewed prior to the procedure.

**Recommendations:**

- Discharge home when standard parameters are met.
- Resume regular diet as tolerated.
- Follow-up on the results of the biopsy specimens.

Reports of your procedure and these recommendations have been sent to:

- None

If specimens were taken during your procedure, they may take several days to be analyzed. Call your doctor's office in ten days if you have not received your results.

Recommendations on this form were provided to the patient or patient representative by:

_____

                                                                                                **Date**

Exhibit 4



**AMERICAN FEDERATION**

**OF**

**GOVERNMENT EMPLOYEES**

**LOCAL 1812**

February 22, 2010

The Broadcasting Board of Governors
Room 3360 Cohen Building
330 Independence Ave., SW
Washington, DC 20237



FEB 2 2 2010

Dear Board Members:

I am requesting that you address the case of Elham Sataki at your earliest convenience. Ms. Sataki has claimed that she was sexually harassed while in the Persian Service. She reported it to her managers and believes that she has not been protected from a hostile work environment.

I met with Ms. Sataki on several occasions and can attest to the fact that she seems to be in a very volatile emotional state. She has requested a medical accommodation that seemed eminently reasonable but IBB management has not granted this request.

Ms. Sataki is a PNN broadcaster and she proposed working out of the Los Angeles Bureau providing stories on, among other things, the large Persian population there. This would separate her from those she believes sexually harassed her and those she believes condoned and tolerated that behavior. This request would also allow the Agency to benefit from her skills by giving her the opportunity to continue providing material for the Persian broadcasts. Instead Agency management seems determined to force her to come back to this building and work outside the Persian Service. However, having her work in this building in the vicinity of her alleged abuser and those that allegedly protect him would, I believe, result in her emotional collapse.

I urge you to press those responsible for making this decision to immediately grant her the medical accommodation she needs.

If you would like to discuss this with me please call me at (202) 382-7616.

Sincerely,

Tim Shamble / President
AFGE Local 1812

  

# GOVERNMENT EMPLOYEES
## LOCAL 1812

ESTABLISHED JANUARY 1958

March 4, 2010

Mr. Harold W. Geisel
U.S. Department of State Office of Inspector General
Room 8100 SA-3
2201 C Street, NW
Washington, DC 20520

> RE: Cover Up and Request for Expedited Investigation
> Regarding Sexual Harassment of and Retaliation Against
> Elham Sataki Television Anchor and Reporter of the VOA
> Persian News Network.

Dear Mr. Geisel:

As set forth in the attached declaration of Timothy Shamble President of AFGE Local 1812, the Acting General Counsel of Broadcasting Board of Governors, Paul Kollmer-Dorsey, and others, including but not limited to: Ms. Elham Sataki's supervisors, are engaged in a cover up of sexual harassment and retaliation against her, which have resulted in her becoming mentally and physically disabled. We respectfully request an immediate investigation of this serious matter, particularly since the retaliation is ongoing and increasing.

We are also enclosing a copy of the civil complaint filed March 1, 2010 against the sexual offender, Mr. Mehdi Falahati.

Thank you for your cooperation.

Timothy E. Shamble President AFGE Local 1812

Larry Klayman Counsel for Ms. Sataki

C: Paul Kollmer-Dorsey
Members of the Broadcasting Board of Governors and the Chief of Staff
Elham Sataki
Members of the Senate and House Oversight Committees

RECEIVED
MAR 5 2010

