UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELHAM SATAKI,             ) | |
|                     ) | |
|      Plaintiff,         ) | |
|                     ) | |
|     v.                  ) | Civil Action No. 10-0534 (CKK) |
|                     ) | |
| BROADCASTING BOARD OF    ) | |
| GOVERNORS, *et al.*        ) | |
|                     ) | |
|      Defendants.       ) | |
|                     ) | |

## MOTION TO DISMISS IN PART OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT

Defendant the Broadcasting Board of Governors moves to partially dismiss the claims against it in Counts I, II, II, IV and V pursuant to Federal Rule of Civil Procedure 12(b)(1), and (b)(6), and in the alternative moves for partial summary judgment. In addition, Defendants Blanquita Cullum, Joaquin Blaya, D. Jeffrey Hirschberg, Steven J. Simmons, Hillary Rodham Clinton, Janice A. Brambilla, Paul Kollmer-Dorsey, Alex Belida, Ali Sajjadi, Susan Jackson, Joy Wagner, Michelle Stewart, and Susah Shand, who appear only in their official capacity,[1] also move that the claims brought against them in their official capacity be dismissed pursuant to

---

[1] Defendants Blanquita Cullum, Joaquin Blaya, D. Jeffrey Hirschberg, Steven J. Simmons, Hillary Rodham Clinton, Janice A. Brambilla, Paul Kollmer-Dorsey, Alex Belida, Ali Sajjadi, Susan Jackson, Joy Wagner, Michelle Stewart, and Susah Shand have not been served in the manner required by Federal Rule of Civil Procedure 4(e), with respect to the individual capacity claims. Service by certified mail at a defendant's place of employment is not proper service for an individual-capacity claim under federal or state procedural rules. See Keller v. Embassy of the United States, 522 F. Supp. 2d 213, 218 (D.D.C. 2007). Thus those defendants are appearing in their official capacity only, and expressly preserve the right to raise an improper service of process defense in connection with the individual-capacity claims, in addition to all other defenses, including without limitation immunity from suit.

Federal Rule of Civil Procedure 12(b)(1), and (b)(6), and in the alternative move for summary judgment.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. BAR # 447889
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Chief, Civil Division

BY:      /s/ Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. BAR # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

OF COUNSEL:

PATRICIA HARGRAVE
Assistant General Counsel
Broadcasting Board of Governors
Office of General Counsel
330 Independence Ave., S.W.
Suite 3349
Washington, D.C. 20037

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELHAM SATAKI, )<br><br>Plaintiff, )<br><br>v. )<br><br>BROADCASTING BOARD OF<br>GOVERNORS, *et al.* )<br><br>Defendants. ) | Civil Action No. 10-0534 (CKK) |

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEEFENDANTS'
## ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rules 7(h) and 56.1, Defendants the Broadcasting Board of Governors

and the remaining defendants who are sued in their official capacity, hereby submit the following

statement of material facts as to which there is no genuine dispute.

1.  Plaintiff Elham Sataki is an employee of the Broadcasting Board of Governors, assigned

    to the Voice of America's Persian News Network. See Grace Decl. ¶ 7.

2.  On March 25, 2010, the BBG's Office of Civil Rights ("OCR") received a complaint

    from Ms. Sataki, alleging disability discrimination and reprisal. See Exh. 1.

3.  OCR accepted Ms. Sataki's complaint on March 30, 2010, and the claims were revised

    on April 9, 2010. See Declaration of Michael D. Hill ("Hill Decl.") ¶ 4.

4.  Ms. Sataki's OCR complaint is still being processed. See id. ¶ 5.

5.  No final decision has been issued on Ms. Sataki's OCR complaint. See id.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. BAR # 447889
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Chief, Civil Division

BY:      /s/ *Robin M. Meriweather*
ROBIN M. MERIWEATHER, D.C. BAR # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

OF COUNSEL:

PATRICIA HARGRAVE
Assistant General Counsel
Broadcasting Board of Governors
Office of General Counsel
330 Independence Ave., S.W.
Suite 3349
Washington, D.C. 20037

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELHAM SATAKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-0534 (CKK) |
| | ) | |
| BROADCASTING BOARD OF | ) | |
| GOVERNORS, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff, Elham Sataki, has raised a variety of constitutional claims, as well as a

Rehabilitation Act and Privacy Act/Freedom Of Information Act claim, against her employer, the

Broadcasting Board of Governors ("BBG"), several governors and BBG employees in their

official and individual capacity, and the Secretary of State. The non-FOIA claims are premised

upon Ms. Sataki's belief that she was sexually harassed, and that the defendants facilitated the

harassment, covered it up, interfered with the investigation of her administrative complaint,

and/or retaliated against her for making allegations of harassment. She also accuses the BBG

and official-capacity defendants of failing to give her a reasonable accommodation for her

alleged disability, and of retaliating against her for criticizing the BBG. The Court lacks

jurisdiction to review most of those claims, because they either have not been exhausted, or

because other statutes preempt the constitutional claims. In addition, the procedural due process

claims fail as a matter of law. Consequently, the claims raised against the BBG and defendants

in their official capacity in Counts I through VI should be dismissed, or alternatively, summary judgment entered in favor of the BBG.

Plaintiff's motion for a temporary restraining order should be denied. Judicial intervention into this routine personnel dispute is unwarranted. Ms. Sataki will suffer only financial injury if she is not granted interim injunctive relief, and she is not likely to succeed on the merits of her claims. The public interest also counsels against granting the extraordinary relief that Ms. Sataki requests. Therefore, Ms. Sataki has not established that either a TRO or preliminary injunction should be granted in this case.

## **BACKGROUND**

The BBG is responsible for all non-military international broadcasting for the federal government.[1]   This is achieved through the International Broadcasting Bureau (IBB), which comprises the Voice of America and the Office of Cuba Broadcasting (OCB).  The Persian News Network (PNN), which is under the Voice of America, provides TV and radio news and information programming to an audience in Iran.

Plaintiff Elham Sataki is a GS-12 international broadcaster for the PNN.  See Declaration of Donna Grace ("Grace Decl."), ¶ 7.  Her duty station is in Washington, D.C.  See id.  Ms. Sataki began working for PNN as an employee on February 19, 2008.  See Grace Decl. at Exh. G.  As an international broadcaster, Ms. Sataki is responsible for reading news segments for the shows "News and Views" and "News Brief," and those readings are taped in Washington, D.C.  See Declaration of Susan Reed Jackson ("Jackson Decl."), ¶ 3.  Ms. Sataki also performs general assignments which involve going into the field, conducting interviews, and creating

---

[1] The Board of the BBG is also responsible for the broadcasting done by Radio Free Europe/Radio Liberty (RFE/FL), Radio Free Asia (RFA), and the Middle East Broadcasting Networks (MBN), which are private, non-profit grantee organizations.

'packages.' Id. Before Ms. Sataki departed for Los Angeles in February 2010, she was being mentored and trained by Susan Jackson. See id. ¶ 4. Ms. Jackson trained Ms. Sataki because Ms. Sataki "does not possess the skills necessary to produce quality broadcast news packages independently." See id. ¶ 4. Although Ms. Jackson "look[s] forward to the day when [Ms. Sataki] is able to travel and return with fantastic personality profiles" for use in news packages, "[t]hat day has not yet arrived." Id. In Ms. Jackson's opinion, if Ms. Sataki were allowed to work alone, without supervision or help from management or her peers, "serious journalistic and production errors could occur." Id. ¶¶ 5-6.

Ms. Sataki has requested to be assigned to Los Angeles as early as August, 2009. See Exh. 6. A separate division in VOA — the Central News Division (which is not a part of PNN) — has a Los Angeles Office with two employees, and PNN contractors use spare desks in the Central News Division's Los Angeles office when they come into the office. See Payton Decl., ¶¶ 2, 5. But PNN has no full time employees, or full time employee positions, in Los Angeles. See Jackson Decl. ¶ 2. PNN has no "on-air" work in Los Angeles, and there are no PNN employees or contractors who deliver news from the Los Angeles Bureau in the way that Ms. Sataki did from Washington, D.C. See id. ¶ 8. The PNN contractors in Los Angeles are freelancers who work independently and send their finished product to Washington, D.C. See id.

In February 2010, Ms. Sataki traveled to Los Angeles, California, using annual leave. Ms. Sataki alleges that she suffered health problems while she was in Los Angeles. On or about March 10, 2010, and after exhausting all but four hours of her annual leave and four hours of sick leave, Ms. Sataki requested leave under the Family Medical Leave Act, advanced annual leave, and advanced sick leave. See Declaration of Lisa Anderson ("Anderson Decl."), ¶ 2. The PNN gave Ms. Sataki advanced annual leave for pay periods 5 and 6, but the Office of Human

Resources concluded that she was not eligible for advanced sick leave. See id. ¶ 5. Ms.

Anderson, a BBG Human Resources Specialist, also gave Michelle Stewart, Employee and

Labor Relations, copies of the leave donor application and worker's compensation claims forms,

so that the documents could be given to Ms. Sataki. See id. ¶ 3. Ms. Sataki applied for the

donated leave program, and was placed in it retroactive to February 28, 2010. To date, she has

received 114 hours of donated leave, which was given to her for pay periods 5, 6, 7, 8, 9, and 10.

See id. ¶ 6. The donated leave and the advanced annual leave allowed Ms. Sataki to obtain pay

for the time that she has been out of the office. See id. Ms. Sataki was not eligible for paid

administrative leave. See Declaration of Donna Grace ("Grace Decl."), ¶¶ 3-6.

On March 25, 2010, the BBG's Office of Civil Rights received a complaint from Ms.

Sataki, alleging disability discrimination and reprisal. See Exh. 1. The complaint was accepted

on March 30, 2010, and the claims were revised on April 9, 2010. See Declaration of Michael

D. Hill ("Hill Decl.") ¶ 4. The complaint is still being processed. See id. ¶ 5. Ms. Sataki

initiated this litigation a few days later, on April 2, 2010. See Docket Entry 1.

The Chief of Staff of the Voice of America authorized Ms. Sataki to be detailed to the

Central News Division during the investigation of her sexual harassment and retaliation

allegations. See Declaration of Barbara N. Brady ("Brady Decl."), ¶ 2. On that detail, Ms.

Sataki would have been assigned to the Middle East Desk. See id. In that detail, Ms. Sataki

would have continued to conduct the job duties that she performed while in the PNN, such as

field reporting and working on packages under the close supervision and guidance of two

supervisors. See id. ¶ 3. The detail was intended to separate Ms. Sataki from Mr. Falahati (who

she alleges harassed her), and the agency offered to coordinate access so that Mr. Falahati did not

come into contact with Ms. Sataki. See id. ¶ 4. This detail would not have required Ms. Sataki

to share office space with Mr. Falahati, and there would have been no need for Ms. Sataki to

enter PNN space while carrying out her duties at Central News Division. See id. ¶¶ 4-5.

On or about May 7, 2010, Ms. Sataki sent an email to the BBG stating that Ms. Sataki

was prepared to and would report to work on May 14, 2010, but indicated that she would report

to the Los Angeles office. See Exh. 5 to Pl's TRO/PI Mot. On May 12, 2010, the BBG

informed Ms. Sataki that she should report instead to Washington, D.C. — where her duty

station was located — and noted the proposed detail to the Central News Division's Middle East

Desk. See id. Ms. Sataki did not return to Washington, D.C., and sent a letter from a clinical

psychologist which suggests that Ms. Sataki can only work in Los Angeles, California, because

she has 'established herself' there, and that is where the psychologist is located. See Exh. 5 to

Pl.'s TRO/PI Mot. The BBG subsequently advised Ms. Sataki that her failure to report to

Washington, D.C. would make her absent without leave. See Exh. 9 (correspondence).

However, the BBG recently agreed to extend Ms. Sataki's leave without pay status to cover the

current absence, and a letter to that effect is forthcoming.[2]

## STANDARD OF REVIEW

### A.  12(b)(1) Motion To Dismiss

Federal Rule of Civil Procedure 12(b)(1) gives the plaintiff the burden of establishing

that the Court has jurisdiction to review their claim(s). See Fed. R. Civ. P. 12(b)(1); Public

Warehousing Co. KSC v. Defense Supply Center Philadelphia, 489 F. Supp. 2d 30, 35 (D.D.C.

2007). The plaintiff bears the burden of persuasion, and must establish jurisdiction "by a

preponderance of the evidence." Thompson v. Capitol Police Bd., 120 F. Supp.2d 78, 81

---

[2] Because of the expedited briefing schedule, Defendants do not yet have the letter. However, as
counsel indicated in the teleconference with the Court on May 25, 2010, in an effort to partially
compromise the issues raised in the TRO, the BBG has agreed to place Ms. Sataki on unpaid
leave and no longer classifies her as AWOL.

(D.D.C. 2000) (citations omitted); see also Vanover v. Hantman, 77 F. Supp.2d 91, 98 (D.D.C. 1999).  To determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Cook v. Billington, 541 F. Supp. 2d 358, 362 n.3 (D.D.C. 2008).

### B.  12(b)(6) Motion To Dismiss

Defendants also move for dismissal under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) requires dismissal if a plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007) (abrogating prior standard which required the moving party to show that plaintiff can prove no set of facts in support of its claim which would entitle it to relief).  The Court must resolve all factual doubts in favor of the plaintiff, and allow the plaintiff the benefit of all inferences.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  The Court may consider the facts alleged in the complaint, any documents attached to or incorporated therein, matters of public record, and matters of which courts may take judicial notice.  See American Fed. Of Gov't Employees TSA Local 1 v. Hawley, 481 F. Supp. 2d 72, 81 (D.D.C. 2006).

### C.  Motion For Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Where no genuine dispute exists as to any material fact, summary

judgment is required. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "(T)he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.

A genuine issue of material fact is one that could change the outcome of the litigation. <u>Id.</u> at 247. The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case. <u>Celotex</u>, 477 U.S. at 325. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the (Court) – that there is an absence of evidence to support the non-moving party's case." <u>Id.</u> Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue exists for trial. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Federal Rule of Civil Procedure 56 requires the party opposing summary judgment to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (the nonmoving party may not rest on mere allegations but "must come forward with 'specific facts showing there is a genuine issue for trial"); <u>Celotex</u>, 477 U.S. at 324. To avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the court to find an entitlement to relief. <u>See</u> <u>Burke v. Gould</u>, 286 F.3d 513, 517-20 (D.C. Cir. 2002) (requiring a showing of specific, material facts); <u>Hayes v. Shalala</u>, 902 F. Supp. 259, 263 (D.D.C. 1995) (opposition to summary judgment must consist of more than mere unsupported allegations or denials).

**ARGUMENT**

I.    **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED OR, ALTERNATIVELY, SUMMARY JUDGMENT SHOULD BE AWARDED TO DEFENDANT, WITH RESPECT TO ALL OF THE NON-FOIA CLAIMS.[3]**

A.    **The Court Lacks Jurisdiction To Review Plaintiff's Rehabilitation Act Claims Because She Has Not Exhausted Administrative Remedies.**

The Rehabilitation Act provides the exclusive remedy for federal employees who seek redress for alleged disability discrimination, including allegations that the federal employer has failed to reasonably accommodate the employee's disabilities, or that the employee was retaliated against for seeking an accommodation. See Taylor v. Small, 350 F.3d 1286, 1291 (D.C. Cir. 2003); 29 U.S.C. § 791; 29 C.F.R. § 1614.103 et seq. The Rehabilitation Act permits employees who have been "aggrieved by the final disposition of their administrative complaint" to seek judicial review. See 29 U.S.C. § 794a(a)(1). Thus, before filing a district court complaint alleging disability discrimination, the plaintiff must completely exhaust administrative remedies, and obtain a "final disposition" at the administrative level. See Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006); Chavers v. Shinseki, 667 F. Supp. 2d 116, 127 (D.D.C. 2009). The jurisdictional nature of that exhaustion requirement precludes courts from excusing a plaintiff's failure to exhaust on grounds of futility, or for any other reason. See Spinelli, 446 F.3d at 162; Rand v. Geithner, 609 F. Supp. 2d 97, 100 (D.D.C. 2009); Moore v. Schafer, 573 F. Supp. 2d 216, 219 (D.D.C. 2008).

The Court lacks jurisdiction to review Ms. Sataki's Rehabilitation Act claims (Count V) because she did not exhaust administrative remedies. Ms. Sataki filed this complaint less than two weeks after she filed a complaint with the Office of Civil Rights. She did not wait to obtain

---

[3]  Defendants do not address Plaintiff's FOIA/Privacy Act claims in this motion, because they are distinct from the claims raised in the temporary restraining order/preliminary injunction motion.

a "final disposition" of her administrative claims, nor does she claim to have done so.  See Exh.

1; Hill Decl., ¶¶ 4-5.  That recently filed administrative complaint is still being processed at the

administrative stage.  See Hill Decl., ¶ 5.  Consequently, Count V must be dismissed pursuant

to Rule 12(b)(1).[4]

### B.  All Of The Claims Premised Upon Allegations Of National Origin And Sex Discrimination, Hostile Work Environment, And A 'Cover Up' Of Sexual Harassment Must Be Dismissed Because Title VII Provides The Exclusive Remedy For Such Claims.

The D.C. Circuit "has repeatedly held that federal employees may not bring suit under the

Constitution for employment discrimination that is actionable under Title VII." Ethnic

Employees of the Library of Congress v. Boorstin, 751 F.2d 1405, 1415 (D.C. Cir. 1985); see

also Myvett . Williams, 638 F. Supp. 2d 59, 70 (D.D.C. 2009).  Title VII is the "exclusive

remedy" for federal employees to challenge employment discrimination based upon their race,

national origin, color, or sex, and to challenge any reprisal for the employee's protected EEO

activity.  See Brown v. General Serv. Admin., 425 U.S. 820, 821 (1976); Kizas v. Webster, 707

F.2d 524, 542 (D.C. Cir. 1983). The Supreme Court's determination that Title VII bars federal

employees' Fifth Amendment equal protection claims is "clear," "unqualified," and "derived

from the legislative history and structure" of Title VII.  Kizas, 707 F.2d at 542.

Ms. Sataki invokes three different constitutional theories to challenge the alleged national

origin and sex-based discrimination, hostile work environment, sexual harassment, and

retaliation. She characterizes Defendants' alleged conduct as a due process violation (Count II),

an equal protection violation (Count III), and a violation of her Fourth Amendment right to be

secure in her person and property (Count IV).  But the underlying factual allegations all concern

---

[4]  The Court may, of course, address Plaintiff's failure to exhaust under the rubric of summary judgment.  See Beckham v. National R.R. Passenger Corp., 636 F. Supp. 2d 111, 114 (D.D.C. 2009).

alleged sex and/or national origin discrimination, sexual harassment, retaliation, and/or an allegedly hostile work environment.  Indeed, the allegations in this complaint mirror the allegations that Ms. Sataki raised in the administrative complaint that she recently filed with the BBG's Office Of Civil Rights ("OCR").  See Exh. 1.

Brown and its progeny preclude Ms. Sataki from raising constitutional claims of national origin and sex discrimination (Count III) and retaliation for engaging in EEO activity (Count III). Ms. Sataki is a federal employee, Compl. ¶ 2, and she has sued her employer and her coworkers alleging that they discriminated against her on the basis of her national origin and sex, and retaliated against her for raising allegations of sexual harassment and seeking a reasonable accommodation of her alleged disability.  Id. ¶¶ 17, 20, 26.  Title VII provides a remedy for claims in which the employee alleges that she has been treated disparately because of her national origin and sex.[5]  See  42 U.S.C. § 2000e-16.  Title VII also provides the exclusive remedy for employees who can show that they suffered a materially adverse action as the result of filing an EEO complaint or engaging in other protected activity.  See Cross v. Samper, 501 F. Supp. 2d 59, 62 (D.D.C. 2007) ("Title VII is the 'exclusive and preemptive' remedy available to federal employees asserting claims related to EEO protected activity or statements"); Perry v. Snowbarger, 590 F. Supp.2d 90, 94 (D.D.C. 2008) (dismissing retaliation claims brought under 42 U.S.C. § 1981, 1983, 1985, and 1986 because Title VII was the exclusive remedy).  Thus, Title VII bars Ms. Sataki's Fourteenth Amendment equal protection claims (Count III) against the BBG and the remaining defendants, the Fourth Amendment claims, and any other

---

[5]   Defendants do not concede that Plaintiff's Title VII claims would have any merit, and simply note that Title VII is the proper statutory framework pursuant to which Plaintiff may seek relief.

constitutional claim premised upon allegations of national origin, sex discrimination, or retaliation for engaging in protected activity. [6]

That line of precedent also bars Ms. Sataki from raising constitutional claims regarding the allegedly hostile work environment and Defendants' alleged failure to prevent or stop the alleged sexual harassment, the alleged cover-up of the harassment, and the alleged facilitation of the harassment. As noted above, federal employees cannot bring constitutional claims for conduct that is within the scope of Title VII, because Title VII is the exclusive remedy for federal employees' discrimination claims. Title VII provides a remedy for sexual harassment claims, including claims premised upon the existence of an allegedly hostile environment. See, e.g., Meritor Savings Bank v. Vinson, 477 U.S. 57, 64-67 (1986). Hostile work environment claims also are within the scope of Title VII. See Smith v. Jackson, 539 F. Supp. 2d 116, 137 (D.D.C. 2008). Thus, Title VII preempts the claims in which Ms. Sataki claims to have suffered a constitutional injury because of the alleged harassment (or the alleged facilitation and/or 'cover-up' of the harassment). See Wade v. Washington Metro. Area. Trans. Auth., 2005 U.S. Dist. Lexis 12972, *19 (D.D.C. June 27, 2005) (Title VII preempts tort claims for failure to ensure that sexual harassment policies were not violated because the alleged injury arises out of the alleged harassment); Rochon v. FBI, 691 F. Supp. 1548, 1556 (D.D.C. 1998) (dismissing constitutional claims raised by plaintiff because they were based on conduct actionable under Title VII). Likewise, Title VII bars Ms. Sataki's constitutional allegations premised upon the

---

[6] In Count IV, Ms. Sataki raises Fourth Amendment claims premised upon Defendants' alleged confiscation of her paychecks in retaliation for "having exercised her constitutional right to complain," Compl. ¶ 21. To the extent that Plaintiff refers to having complained to the BBG's Office of Civil Rights (as opposed to criticizing the agency's alleged failure to present a "pro-American" viewpoint), Title VII bars those claims.

presence of an allegedly hostile work environment at the BBG,[7] because such conduct "is only actionable under Title VII." Myvett, 638 F. Supp. 2d at 70 (dismissing constitutional claims premised on hostile work environment and retaliation theory); see also Wade, 2005 U.S. Dist. Lexis 12972 at *18 (Title VII preempts claims alleging individuals failed to assure that plaintiff was not subjected to a hostile work environment).

In sum, the Constitution does not create an alternative means of enforcing the right to be free of discrimination, sexual harassment, retaliation, or a hostile work environment in federal employment. As the D.C. Circuit has recognized in the Title VII context, allowing federal employees to bring constitutional equal protection claims to challenge employment discrimination "would frustrate the legislative policies" underlying that statute, i.e., by giving employees an end-run around the statute's administrative exhaustion requirements. Boorstin, 751 F.2d at 1415. Indeed, that appears to be what Ms. Sataki desires to do in this case — as she filed suit in this Court less than two weeks after filing an administrative complaint with the BBG's Office of Civil Rights, and has not exhausted any of the underlying claims. Accordingly, Title VII bars all of the constitutional claims against the BBG premised upon allegations that Ms. Sataki was: (1) treated unfavorably because she had complained about alleged sexual harassment and/or because of her sex and national origin; (2) subjected to harassment and a hostile work environment; (3) injured by the agency's and employees' alleged effort to 'cover up' the alleged sexual harassment. The claims Sataki brings against the remaining defendants in their official capacity (which are identical to the claims against BBG under these theories) also are barred. Accordingly, Counts II, III, and IV should be dismissed.

---

[7] Defendants do not concede that Ms. Sataki's allegations are legally sufficient to support a hostile work environment claim, but merely note that Ms. Sataki appears to be alleging that such an environment existed at the BBG's Persian News Network.

12

**C.    The Civil Service Reform Act Bars Plaintiff's First And Fourth Amendment Retaliation Claims Against The BBG And The Official-Capacity Defendants For Allegedly Retaliating Against Her For Criticizing the BBG.**

The Civil Service Reform Act ("CSRA") provides a forum in which federal employees who believe that they have been subjected to certain personnel actions as a result of their First Amendment activity may seek review of the agency's actions. See Pub. L. No. 95-454, 92 Stat. 1111 (codified at various sections of Title 5 of the United States Code). After completing the CSRA's remedial process, the D.C. Circuit permits federal employees to seek judicial review of certain constitutional claims. See Weaver v. United States Info. Agency, 87 F.3d 1429, 1433 (D.C. Cir. 1996) (noting that other circuits do not allow a judicial forum after CSRA review is complete). "But first the plaintiff must exhaust available administrative remedies." Weaver, 87 F.3d at 1433. CSRA exhaustion is "a jurisdictional prerequisite to suit." Id.; see also Steadman v. Governor, United States Soldiers and Airmen Home, 918 F.2d 963, 966 (D.C. Cir. 1996); Dews-Miller v. Clinton, __ F. Supp. 2d __, 2010 U.S. Dist. Lexis 412888, *31 (D.D.C. Apr. 27, 2010).

The CSRA's review process provides the exclusive remedy for employees who claim to have been retaliated against for engaging in activity protected by the Whistleblower Protection Act. The employee must file a complaint with the Office of Special Counsel, and may appeal an adverse ruling to the Merit Systems Protection Board (MSPB). See 5 U.S.C. §§ 1214, 1221; Harris v. Bodman, 538 F. Supp. 2d 78, 82 (D.D.C. 2008). If dissatisfied with the MSPB's ruling, the employee may appeal it to the Federal Circuit. See 5 U.S.C. § 7703. But "[u]nder no circumstances does the [Whistleblower Protection Act] grant the District Court jurisdiction to entertain a whistle-blower cause of action brought directly before it in the first instance." Harris, 538 F. Supp. 2d at 82 (quoting Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002)).  Thus,

when a federal employee files a complaint in federal district court based on whistleblowing activity, the district court lacks jurisdiction to review it.  See Harris, 538 F. Supp. 2d at 82.

Ms. Sataki's allegations describe precisely the type of conduct which must be raised and exhausted pursuant to CSRA procedures. She states that she believes that BBG is insufficiently "pro-American," and claims to have "cooperated with Congress in educating it to the problems at VOA/PNN." Compl. ¶ 6.  Although Ms. Sataki does not identify any specific whistle-blowing activity in which she allegedly has engaged, she claims to be perceived as having "blown the whistle on Defendants for mismanaging and misusing VOA/PNN to promote anti-American and anti-Iranian freedom movement rhetoric." Id.  Ms. Sataki accuses the BBG and the official-capacity defendants of taking a variety of punitive actions against her as retaliation for that First Amendment and/or whistle-blowing activity. Id. ¶¶ 6, 10-12.

Ms. Sataki's claims regarding alleged retaliation for 'speaking out' against the BBG must be dismissed for lack of jurisdiction because they fall within the scope of the CSRA.  Ms. Sataki does not claim to have initiated, let alone completed, the CSRA's review process.  Ms. Sataki cannot use this lawsuit as an end-run around the CSRA's requirements. "[T]he public interest in upholding the structure created by Congress for addressing personnel-related matters is so strong that federal employees 'may not circumvent that structure even if their claim is based on the Constitution.'"  Convertino, 393 F. Supp. 2d at 47 (quoting Steadman, 918 F.2d at 967). Therefore the First Amendment retaliation claims raised in Count I, as well as the Fourth Amendment claim accusing Defendants of confiscating Ms. Sataki's paychecks in retaliation for "having exercised her constitutional right to complain," Compl. ¶ 21, should be dismissed for lack of jurisdiction.

**D.     There Is No Constitutional Damages Remedy Available Against The BBG
And The Official-Capacity Defendants.**

To the extent that Ms. Sataki seeks damages from the BBG and the official-capacity

defendants for the alleged violations of her constitutional rights,[8] she has no viable claim. There

is no damages remedy against federal agencies for alleged constitutional violations. See Taylor

v. FDIC, 132 F.3d 753, 768 (D.C. Cir. 1997).  Suits against agency officials in their official

capacity are effectively suits against the agency itself.  See Kentucky v. Graham, 473 U.S. 159,

165 (1985); Brandon v. Holt, 469 U.S. 464 (1985); Pittman v. Lapin, 662 F. Supp. 2d 58,

(D.D.C. 2009).  Consequently, agency officials cannot be sued in their official capacity for

constitutional damages.  See Taylor, 132 F.3d at 768.

**E.     Ms. Sataki's Due Process Claims Fail As A Matter Of Law Because She Can
Pursue Her Claims In An Administrative Forum And Thus Has Received All
Of The Process To Which She Is Due.**

The D.C. Circuit has described the due process standard as follows:

> [T]he due process clause requires, at minimum, that the government provide notice and
> some kind of hearing before final deprivation of a property interest. See Logan v.
> Zimmerman Brush Co., 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982)
> ("[I]t has become a truism that ' some form of hearing' is required before the owner is
> finally deprived of a protected property interest.") (citation omitted) (emphasis in
> original); Gray Panthers v. Schweiker, 652 F.2d 146, 165 (D.C.Cir.1980) (defining "core
> requirements" of due process as "adequate notice ... and a genuine opportunity to
> explain"). The notice provided must be "reasonably certain to inform those affected,"
> Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94
> L.Ed. 865 (1950), and the opportunity to be heard must be given "at a meaningful time
> and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187,
> 1191, 14 L.Ed.2d 62 (1965).

---

[8]  The constitutional damages remedy provided by Bivens v. Six Unknown Named Agents of
Federal Bureau of Narcotics, 403 U.S. 388 (1971), only provides a remedy against officials sued
in their individual capacities.  Although Ms. Sataki has raised Bivens claims, the Bivens
defendants have not been properly served, and thus are not yet required to respond to her
complaint.

> Beyond these threshold procedural requirements, the contours of due process are flexible
> and vary depending upon the circumstances of a given case. See Zinermon v. Burch, 494
> U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990).

Propert v. District of Columbia, 948 F.2d 1327, 1332-33 (D.C. Cir. 1991). Thus, to prevail on

her due process claims, Ms. Sataki must show that she had a property interest, and was deprived

of that interest without being afforded the amount of "process" that is constitutionally required.

See id.; Robinson v. District of Columbia Housing Auth., 660 F. Supp. 2d 6, 20 (D.D.C. 2009).

Ms. Sataki cannot establish either element.

First, Ms. Sataki cannot meet her threshold burden of establishing that she has a property

interest sufficient to trigger procedural due process rights. Ms. Sataki has not been terminated;

she remains a BBG employee, although she is on unpaid leave. See Exh. 9. Even if Ms. Sataki

had been terminated, as a federal employee, she would not have a property interest in continued

federal employment. See Commeree v. Hantman, 1999 WL 1611325, at *5 (D.D.C. Oct. 28,

1999), aff'd 2001 WL 1610062 (D.C. Cir. Nov. 21, 2001).  But see Vanover v. Hantman, 77 F.

Supp. 2d 91, 101-104 (D.D.C. 1999).  It follows that she does not have a property interest in

being employed on the terms that she prefers, e.g., being allowed to work in a location other than

her duty station, or being placed on paid leave after having exhausted her annual and sick leave.

Although certain statutory causes of actions may give rise to a protected property interests, Ms.

Sataki's statutory causes of action under the federal employment laws do not rise to that level.

See Tulsa Professional Collection Servs., Inc. v. Pope, 485 U.S. 478, 485 (1988) (noting that a

party may have a property interest in a statutory cause of action).  "Causes of actions only

become actionable property interests upon the entry of final judgment," and Ms. Sataki's

employment claims have not yet reached that stage. Jung v. American Ass'n of AM. Medical

Colleges, 339 F. Supp. 2d 26, 42-43 (D.D.C. 2004); see also Adams v. Hinchman, 154 F.3d 420,

424 (D.C.Cir.1998) (a cause of action "affords no definite or enforceable property right until reduced to a final judgment"); <u>Grimesy v. Huff</u>, 876 F.2d 738, 744 (9th Cir.1989) ("a party's property right in any cause of action does not rest until a final unreviewable judgment is obtained."). Therefore, the due process claims fail as a matter of law. <u>See</u> <u>Fried v. Hinson</u>, 78 F.3d 688, 691-92 (D.C. Cir. 1996) ("By its terms, the Due Process Clause does not apply unless an individual can show that the government action at issue deprives [her] of an actual interest in life, liberty, or property.")

But even if Ms. Sataki did have a protected property interest in continuing to receive pay while she is in Los Angeles, or in her Title VII and/or Rehabilitation Act causes of actions, her allegations fall far short of establishing a due process violation. Ms. Sataki has an opportunity to challenge any personnel actions that she believes are adverse and discriminatory, and any final denial of a reasonable accommodation, by filing an administrative complaint with the BBG's Office of Civil Rights. She has exercised that right. <u>See</u> Exh. 1 (OCR Complaint). In order to satisfy the due process requirement of the Fifth Amendment, an administrative process need only provide notice and "some form of hearing." <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 434 (1982). <u>See also</u> <u>Matthews v. Aldridge</u>, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") When the OCR investigation is complete, Ms. Sataki may seek a hearing, and she ultimately may seek judicial review of the disputed issues. That is all the "process" that she is due. Ms. Sataki does not have a right to have the administrative case processed a certain way. <u>See</u>, <u>e.g.</u>, <u>Young v. Sullivan</u>, 733 F. Supp. 131 (D.D.C. 1990); <u>Svenson v. Thomas</u>, 607 F. Supp. 1004 (D.D.C. 1985); <u>McCottrell v. EEOC</u>, 726 F.2d 350 (7th Cir. 1983). Thus, Ms.

17

Sataki's conclusory allegation that witnesses are being "tampered with," or discouraged from testifying does not state a viable claim for a due process violation.

## II.   PLAINTIFF HAS NOT ESTABLISHED THAT IMMEDIATE INJUNCTIVE RELIEF IS WARRANTED.

A preliminary injunction is an "extraordinary and drastic remedy." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  A party that seeks injunctive relief pursuant to a motion for a preliminary injunction or temporary restraining order must show:

> (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction were not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction.

Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006); see also Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 303 (D.C. Cir. 2001); Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1998); Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1505-06 (D.C. Cir. 1995); NTEU v. United States, 927 F.2d 1253, 1254 (D.C. Cir. 1991); Randolph-Sheppard Vendors v. Weinberger, 795 F.2d 90, 110 (D.C. Cir. 1986).  Those four factors "interrelate on a sliding scale and must be balanced against each other." Serono Labs., Inc., 158 F.3d at 1318.  However, if the moving party fails to show a likelihood of success on the merits, the court may deny the preliminary injunction motion without reaching the other three factors. See Katz v. Georgetown Univ., 246 F.3d 685, 688 (D.C. Cir. 2001).  A party's failure to establish any irreparable injury can be equally fatal. See CityFed Fin. Corp. v. OTS, 58 F.3d 738, 747 (D.C. Cir. 1995); Farris v. Rice, 453 F. Supp. 2d 76, 78 (D.D.C. 2006).  The movant bears the burden of persuasion, and may obtain a preliminary injunction only upon a "clear showing" that it is entitled to that extraordinary remedy. Chaplaincy of Full Gospel Churches, 454 F.3d at 297.

**A. Ms. Sataki Faces A Particularly Heavy Burden Because She Seeks To Alter the Status Quo.**

Motions for preliminary injunctions and temporary restraining orders typically are used to preserve the status quo pending litigation. In some cases, such as this one, the plaintiff does not ask the Court to preserve the status quo, but instead requests far-reaching mandatory relief. See Mylan Pharmaceuticals, Inc. v. Shalala, 81 F.Supp. 2d 30, 36 (D.D.C. 2000). Such motions are disfavored, and "the movant must show *clearly* that she is entitled to relief or that extreme or very serious damage will result." Farris v. Rice, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (emphasis added). Thus, the fact that Ms. Sataki asks the Court to alter the status quo — and direct the BBG to pay her to work in Los Angeles despite the fact that her duty station is in Washington, D.C. — means that she faces a higher burden than the ordinary movant.

The fact that Ms. Sataki filed this lawsuit and her TRO/PI motion before exhausting administrative remedies under the Rehabilitation Act, Title VII, or the Civil Service Reform Act makes the award of interim mandatory injunctive relief particularly inappropriate. The exhaustion requirements reflect Congress's judgment that federal agencies should be given an opportunity to resolve personnel matters internally and avoid unnecessarily burdening the courts. See Bush v. Engleman, 266 F. Supp. 2d 97, 101 (D.D.C. 2003) (citing Wilson v. Pena, 79 F.3d 154, 165 (D.C. Cir. 1996)). Under the Rehabilitation Act, federal jurisdiction arises only *after* exhaustion has occurred. Courts in this district have occasionally exercised their powers to fashion interim injunctive relief in employment discrimination cases prior to the completion of the administrative process, when exhaustion is not a jurisdictional prerequisite to suit. See Wagner v. Taylor, 836 F.2d 566, 571 (D.C. Cir. 1987). But the authority to do that arises from a "limited judicial power to preserve the court's jurisdiction or maintain the *status quo* by injunction pending review of an agency's action through the prescribed statutory channels." Id.

19

Here, Ms. Sataki seeks to *alter* the status quo, and force her employer to create a position or work assignments for her in Los Angeles. Thus, Ms. Sataki is asking this Court to intervene in an ongoing personnel dispute, and direct the outcome of that dispute, before the dispute has been conclusively resolved and long before it is ripe for judicial review. The power to fashion such relief would not arise from courts' power to preserve the status quo and preserve their jurisdiction. Even assuming for the sake of argument that the Court would have the power to enter such an order, to do so would be a remarkable departure from the well-settled rule that federal employees' personnel matters should first be resolved at the agency level before they are litigated in federal courts. Therefore, Ms. Sataki's request for interim injunctive relief should be very closely scrutinized, and held to a particularly high burden of proof.

### B.  Ms. Sataki Is Unlikely To Succeed On The Merits.

#### 1.       This Court Cannot Review Ms. Sataki's Claims On The Merits, Let Alone Resolve Them In Her Favor.

Ms. Sataki has no chance of success on the merits because her non-FOIA claims will not survive Defendants' motion to dismiss. As discussed *supra*, this Court should dismiss Ms. Sataki's claims for lack of jurisdiction, and for failure to state a claim, for three reasons: (1) the Court lacks jurisdiction over the Rehabilitation Act claim because Ms. Sataki has not exhausted administrative remedies; (2) most of the constitutional claims are preempted by the Civil Service Reform Act and Title VII, and Ms. Sataki failed to exhaust the administrative remedies available under those statutes; (3) the due process claim fails as a matter of law; and (4) the agency and official-capacity defendants cannot be sued for damages based on alleged constitutional violations. Given that Ms. Sataki cannot litigate (let alone prevail on) her claims in this Court, she cannot obtain a preliminary injunction. See In re Guantanamo Bay Detainee Litigation, 570 F. Supp. 2d 13, 17-18 (D.D.C. 2008) (finding little likelihood of success on the merits where

serious questions existed regarding court's jurisdiction); Tanner v. Federal Bureau of Prisons,

433 F. Supp. 2d 117, 122 n.5 (D.D.C. 2006); Power Mobility Coalition v. Leavitt, 404 F. Supp.

2d 190, 205 (D.D.C. 2005) ("[T]he plaintiff is not likely to succeed on the merits because this

Court is barred by statute from having subject matter jurisdiction in this case").

**2.      Ms. Sataki Is Unlikely To Succeed On The Merits Of Her
Rehabilitation Act Claim After It Has Been Exhausted.**

Ms. Sataki's Rehabilitation Act Claims are not yet ready for judicial review, because she

has not yet exhausted her administrative remedies (which deprives the Court of jurisdiction).  By

rushing to Court shortly after sending a letter from a clinical psychologist which purportedly

indicates that Ms. Sataki must remain in Los Angeles for medical reasons, Ms. Sataki and her

counsel have not given the BBG sufficient time to engage in "a flexible, interactive process" to

determine whether Ms. Sataki has established that she is disabled, or to assess whether and to

what degree an accommodation should be granted in the circumstances.  Stewart v. District of

Columbia, 2006 WL 626921, *5 (D.D.C. March 12, 2006) (noting that accommodations are

determined through that interactive process).  Indeed, the BBG has asked Ms. Sataki to provide

further documentation regarding her alleged disability, see Exh. 9, but has not yet received a

response.  As a result of the timing of this litigation and TRO/PI motion, the BBG does not yet

have a fully developed record regarding Ms. Sataki's request for an accommodation, the nature

and extent of her alleged disability, and/or what accommodation may be appropriate or

warranted if a disability is established.  This situation highlights the need to have, and strictly

enforce, the exhaustion requirement in cases involving federal personnel matters.

Despite the lack of a fully developed record, the facts that Defendants have gathered to

date strongly indicate that Ms. Sataki will not succeed on the merits of her Rehabilitation Act

claim.  It is difficult to conceive of a disability that makes Los Angeles the only location where

21

Ms. Sataki can live and work, or that cannot be treated by any physician other than the doctor(s) with whom Ms. Sataki has established a relationship since February of this year, yet is not so severe that it precludes Ms. Sataki from working altogether. See Nurriddin v. Bolden, 674 F. Supp. 2d 64, 85 (D.D.C. 2009) (concluding that plaintiff was not "an individual with a disability" because his inability to work in certain jobs at NASA did not reflect a broader inability to perform other jobs); Rand v. Geithner, 609 F. Supp. 2d 97, 103-04 (D.D.C. 2009) (finding impairment that only limited plaintiff's ability to work in a specific location was not a disability within the meaning of the Rehabilitation Act). But given the timing and procedural posture of this case, Defendants will assume for purposes of this memorandum that Ms. Sataki will be able to provide sufficient medical documentation that she has a disability and that she cannot work in Washington, D.C. Even if those facts were proven (and Defendants in no way concede that they will be), Ms. Sataki would not prevail on a Rehabilitation Act claim, because she would be unable to establish that the Rehabilitation Act requires the BBG to permit her to work in Los Angeles.

To establish a prima facie case of disability discrimination, Ms. Sataki must show: (1) that she is an individual who has a disability within the meaning of the Rehabilitation Act; (2) that BBG had reasonable notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that BBG refused to make such accommodations. See Porter v. Jackson, 668 F. Supp. 2d 222, 233 (D.D.C. 2009). An employer is "not required to provide an employee that accommodation he requests or prefers; the employer need only provide some reasonable accommodation." Aka v. Washington Hospital Center, 156 F.3d 1284, 1305 (D.C. Cir. 1998); see also Porter, 668 F. Supp. 2d at 234-35 (noting that "plaintiff's focus on the reasonableness of her own proposed accommodation is misplaced").

22

The employer may request the employee to further document the alleged disability. See Porter, 668 F. Supp. 2d at 234.

If Ms. Sataki has a disability that requires her to work in Los Angeles, she will not be able to perform the essential functions of her position. Ms. Sataki is a GS-12 International Broadcaster for the Persian News Network ("PNN"). See Grace Decl., ¶ 7. Her duty station is Washington, D.C. Ms. Sataki reads news segments for a show that is taped in Washington, D.C. See Jackson Decl., ¶ 3. PNN has no full time employees, or full time employee positions, in Los Angeles.[9] See Jackson Decl. ¶ 2. Ms. Sataki cannot telecommute from Los Angeles, because she is not skilled enough to work alone without supervision, or to create news stories and produce them to completion independently and without supervision. See id. ¶ 6. She lacks the skill necessary to complete packages from Los Angeles on her own, or to shoot her own material and send it to Washington. See id. ¶ 7. Ms. Sataki's mentor hoped to train Ms. Sataki so that she eventually would have those skills, but Ms. Sataki has not yet developed them. See id. ¶ 4. PNN has no "on-air" work in Los Angeles, and there are no PNN employees or contractors who deliver news from the Los Angeles Bureau in the way that Ms. Sataki did from Washington, D.C. See id. ¶ 8. Therefore, Ms. Sataki cannot function independently in the manner that the freelance contract video journalists in Los Angeles do. See id. Accordingly, Ms. Sataki cannot perform her job's essential functions without being in Washington, D.C. The Rehabilitation Act does not require the BBG to accommodate Ms. Sataki under those circumstances. See Porter, 668 F. Supp. 2d at 233 (noting that the Rehabilitation Act requires federal agencies to "reasonably accommodate" employees' disabilities "*unless doing so would cause an undue*

---

[9] A different VOA component — the Central News Division — has a Los Angeles Office with two employees, and PNN contractors use spare desks in the Central News Division's Los Angeles office when they come into the office. See Payton Decl., ¶¶ 2, 5.

*hardship to the agency*"); Bowden v. Clough, 658 F. Supp. 2d 61, 93 (D.D.C. 2009) (plaintiff's request was not a reasonable accommodation and would cause undue hardship to employer because the agency "may not have the technological or personnel resources" to allow plaintiff to avoid attending any meeting where a coworker was present).

Furthermore, the law is clear in that an employer is not required to create a new position, and that such a request does not constitute a reasonable accommodation under the law. See U.S. Airways, Inc. v. Barnett, 535 U.S. 39, 41 (2002); Aka, 156 F.3d at 1304; Gratzl v. Office of Chief Judges, 601 F.3d 674, 680 (7th Cir. 2010). Thus Ms. Sataki's requested "accommodation" of a position or detail in Los Angeles is not reasonable, and the Rehabilitation Act does not require the BBG to grant that request. For those reasons, Defendant anticipates that Ms. Sataki will be unable to prevail on her Rehabilitation Act claim.

### 3.    Ms. Sataki Is Unlikely To Succeed On The Merits Of Her *Bivens* Claims.

Ms. Sataki seeks to recover damages from several agency officials, in their individual capacity, for alleged violations of her constitutional rights. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), gives federal courts "discretion in some circumstances to create a remedy against federal officials for constitutional violations, but [courts] must decline to exercise that discretion where 'special factors counsel[ ] hesitation" in doing so." Wilson v. Libby, 535 F.3d 697, 705-06 (D.C. Cir. 2008). Courts do not recognize a Bivens cause of action when Congress has created a comprehensive alternative remedial scheme pursuant to which the plaintiff may seek redress for the alleged constitutional injuries, regardless of whether the relief provided appears likely to satisfy the plaintiff's demands in the given case. See id. Further, "[b]ecause implied causes of action are disfavored, the Court has been reluctant

24

to extend *Bivens* liability 'to any new context or new category of defendants.'" Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1948 (2009).

Ms. Sataki's First Amendment *Bivens* claims fail as a matter of law, and will be subject

to dismissal under Rule 12(b)(6), because the CSRA provides a comprehensive remedial scheme

which precludes the recognition of a *Bivens* remedy.  It is well settled that federal employees

who allege First Amendment retaliation cannot pursue *Bivens* claims.  See Bush v. Lucas, 462

U.S. 367, 368 (1983); Spagnola v. Mathis, 859 F.2d 223, 229 (D.C. Cir. 1988).  Instead, they are

limited to the process established in the CSRA.

Ms. Sataki's constitutional claims involving allegations of retaliation, sex discrimination,

race discrimination, hostile work environment, and/or sexual harassment (Counts II, III, and IV),

also will be subject to dismissal because they are precluded by Title VII.  Brown v. GSA

establishes that Title VII is the exclusive remedy for federal employees' employment

discrimination claims.  See Brown,  425 U.S. at 821.  Consequently, federal employees may not

use Bivens to seek monetary damages against their coworkers and/or supervisors for alleged acts

of employment discrimination.  See Kittner v. Gates, __ F. Supp. 2d __, 2010 WL 1704182, *7

(D.D.C. Apr. 28, 2010); Rogler v. Biglow, 610 F. Supp. 2d 103, 105 (D.D.C. 2009).

The due process *Bivens* claim also fails. To the extent that Ms. Sataki contends that the

*Bivens* defendants have interfered with the administrative process as a means of retaliation, the

*Bivens* claims are barred by Title VII and the CSRA.  To the extent that she claims that her

procedural due process rights were violated based on a non-retaliatory motive, qualified

immunity will shield the *Bivens* defendants from suit, because their alleged conduct does not

violate "clearly established" constitutional law, and did not deprive Ms. Sataki of any

constitutional right to due process.  See Wilson v. Layne, 526 U.S. 603, 618 (1999) (discussing

qualified immunity standard); Olaniyi v. District of Columbia, 416 F. Supp. 2d 43, 52 (D.D.C. 2006) (same); Part I-E, supra (discussing grounds for dismissing due process claims).

### C. Ms. Sataki Has Not Established Irreparable Harm.

Although the Court must consider all of the elements in determining whether a preliminary injunction is viable, D.C. courts have determined that "if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors." American Association for Homecare v. Leavitt, 2008 WL 2580217 (D.D.C. 2008), citing CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir.1995). No injunction may issue in the absence of an "irreparable injury," no matter how strongly the other factors support the movant. See CityFed Fin. Corp., 58 F.3d at 747; Farris, 453 F. Supp. 2d at 78. The moving party bears the burden of establishing that, absent an injunction, it will suffer an injury that is "both certain and great," and that "there is a clear and present need for equitable relief to prevent irreparable harm." Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985). As the D.C. Circuit has recognized,

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Chaplaincy of Full Gospel Churches, 454 F.3d at 298 (emphasis in original; internal quotations omitted).

The Court's analysis of Ms. Sataki's TRO/PI motion could begin and end with "irreparable harm," because Ms. Sataki has not established that type of injury. Economic loss, even when large sums of money are involved, does not constitute irreparable injury. See id.; Wisconsin Gas Co., 758 F.2d at 674. Ms. Sataki claims to need immediate injunctive relief (in

the form of an order directing the BBG to allow her to work in Los Angeles) because being on

unpaid leave deprives her of the funds that she allegedly needs to pay her bills.  Loss of income

falls "far short of the type of irreparable injury which is a necessary predicate to the issuance of a

temporary injunction."  Sampson v. Murray, 415 U.S. 61, 91-92 (1974).  That is true even if the

plaintiff does not have enough financial reserves to offset the lost income: "[A]n insufficiency of

savings . . . will not support a finding of irreparable injury, however severely [it] may affect a

particular individual."  Id. at 92, n. 68; Veitch, 135 F. Supp. 2d at 36 (internal quotation marks

omitted). Ms. Sataki's alleged financial hardship is less onerous than the situation in which

individuals who have been discharged from federal employment typically find themselves;

discharged employees typically lose income *and* benefits, and may also have a loss of reputation.

Courts have repeatedly held that the loss of benefits, income, and reputation are insufficient to

show irreparable injury.  See Veitch v. Danzig, 135 F. Supp. 2d 32, 36 (D.D.C. 2001); Gilmore v.

International Union of Operating Engineers, 899 F. Supp. 652, 658 (D.D.C. 1995).

Consequently, even plaintiffs who challenge actions that will cause them to lose their job

ordinarily cannot obtain preliminary injunctive relief.  See, e.g., Farris, 453 F. Supp. 2d at 79

("[C]ases are legion holding that loss of employment does not constitute irreparable injury");

Ogunleye v. Arizona, 66 F. Supp. 2d 1104, 1111 (D. Ariz. 1999) (finding no irreparable harm

where plaintiff alleged she would lose her job absent an injunction); Ahmad v. Long Island

University, 18 F. Supp. 2d 245, 248-49 (E.D.N.Y. 1998) (denying professor's argument that

termination would constitute irreparable harm where plaintiff could seek other employment and

was not facing bankruptcy); Nacarati v. Wilkins Tp., Pa., 846 F. Supp. 405, 409 (W.D. Pa. 1993)

("The loss of employment does not provide the requisite showing of imminent irreparable

harm."); Williams v. State Univ. Of New York, 635 F. Supp. 1243, 1248 (E.D.N.Y. 1986) ("In

essence, the plaintiff must quite literally find [himself] being forced into the streets or facing the spectre of bankruptcy before a court can enter a finding of irreparable harm" based on loss of employment).

In order to obtain an injunction, the "injury must be beyond remediation." Chaplaincy of Full Gospel Churches, 454 F.3d at 297.  Plaintiff's temporary loss of income does not meet that standard.  First, if Plaintiff prevails on her claims, the alleged financial harm can be remedied at the conclusion of litigation through an award of backpay or other monetary remedies.  Thus, if Ms. Sataki's Rehabilitation Act claims are found to be meritorious, "adequate compensatory or other corrective relief will be available at a later date," and the possible availability of that relief "weighs heavily against a claim of irreparable harm."  Bors v. Allen, 607 F. Supp. 2d 204, 211 (D.D.C. 2009) (quoting Wisconsin Gas, 758 F.2d at 674); see also Sampson, 415 U.S. at 90-91 (noting that availability of back pay and compensatory damages indicates that loss of income could be remedied and was not irreparable harm); Farris, 453 F. Supp. 2d at 79-80.  Moreover, this temporary loss of income is, in part, a crisis of Ms. Sataki's own making.  The BBG has a job waiting for her in D.C.  It was Ms. Sataki who left the city of her duty station to go to Los Angeles.  Thus, she can restore her income stream simply by returning to her job in Washington, D.C., or accepting the proposed detail to the Central News Division in Washington, D.C.

Further, there are interim measures that Ms. Sataki can take to resolve or at least mitigate her alleged financial difficulties.  If the psychological and/or physical ailments that Ms. Sataki claims to have suffered fit the definition of workplace injuries, she can seek workers' compensation benefits; indeed, the agency informed her of that option.  See Anderson Decl., ¶ 4.

If Ms. Sataki is disabled, she may be eligible to seek disability benefits.  Ms. Sataki also could seek alternative employment in Los Angeles.

Ms. Sataki's allegation that she needs money to pay her medical bills does not transform her purely financial harm into an "irremediable injury" sufficient to warrant immediate injunctive relief.  "[C]ases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." Farris, 435 F.2d 80.  But this is not such a case. Ms. Sataki has not been terminated; thus, unlike a terminated employee, she has not lost any previously-held health insurance coverage.  She does not claim to have filed for bankruptcy. And given that Ms. Sataki contends that her family and friends live in Los Angeles, she presumably could request their assistance and/or make arrangements with them to minimize her living expenses.  While Ms. Sataki obviously would prefer to be collecting her regular salary, and using it to cover the medical and other expenses she incurs to live in Los Angeles, that is the type of "purely financial" harm that courts routinely find insufficient to support entry of a temporary restraining order or preliminary injunction.

### D. The Public Interest and Harm to Third Parties Counsel Against Granting Interim Injunctive Relief.

In Sampson, the Supreme Court stressed the importance of granting the government "the widest possible latitude in the dispatch of its own affairs." Sampson, 415 U.S. at 83.  Granting Ms. Sataki's request for injunctive relief would severely compromise Defendants' ability to make the most fundamental personnel decisions in dispatching the BBG's affairs.  Ms. Sataki asks the Court to direct the BBG to create a new position for her in Los Angeles, create a special telecommuting arrangement for her, and/or send her on a detail to Los Angeles.  And she seeks

that extraordinary relief before the agency has even had an opportunity to review any supplemental medical information regarding Ms. Sataki's alleged disability and need for an accommodation, and before the agency has had an opportunity to review her allegations in the administrative process (and evaluate whether any compromise can be reached). Having the Court intervene in this personnel matter at such a premature stage is contrary to public interest, because it seriously impedes a federal agency's ability to handle personnel matters. See generally Andrade v. Lerner, 729 F.2d 1475, 1489-90 (D.C. Cir. 1984) (denying preliminary injunction motion seeking to prevent discharge prior to exhaustion of administrative remedies and noting courts' reluctance to interfere "in the sensitive area of federal employee relations"); Sampson, 415 U.S. at 83-84 (noting wide latitude given to government personnel decisions). It also would set a dangerous precedent, as it may encourage other federal employees to rush to court prematurely and use litigation and TROs as an end-run around the comprehensive administrative scheme established by federal employment discrimination statutes.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in part, and this Court should deny the motion for a temporary restraining order for failure to establish an entitlement to preliminary injunctive relief.

Dated May 27, 2010

Respectfully submitted,

RONALD C. MACHEN JR., D.C. BAR # 447889
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Chief, Civil Division

BY:     */s/ Robin M. Meriweather*
ROBIN M. MERIWEATHER, D.C. BAR # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov


OF COUNSEL:

PATRICIA HARGRAVE
Assistant General Counsel
Broadcasting Board of Governors
Office of General Counsel
330 Independence Ave., S.W.
Suite 3349
Washington, D.C. 20037