**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ELHAM SATAKI, |
|     Plaintiff, |
|     v. |
| BROADCASTING BOARD OF GOVERNORS, *et al.*, |
|     Defendants. |

Civil Action No. 10-534 (CKK)

**MEMORANDUM OPINION**
(June 1, 2010)

    Plaintiff Elham Sataki filed the above-captioned action through counsel on April 2, 2010.

She named as Defendants her employer, the Broadcasting Board of Governors ("BBG"), as well as

several members and employees of the BBG, both in their official and individual capacities

("Individual Defendants") (collectively with BBG, "Defendants").  In her Complaint, Plaintiff

alleges that Defendants have violated her constitutional rights under the First, Fourth, Fifth, and

Fourteenth Amendments and have also denied her a reasonable accommodation for her alleged

disability under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*[1]  Plaintiff's claims in this

action are largely premised upon her allegations, asserted in the related civil action *Sataki v.

Falahati*, Civ. Act. No. 10-466 (CKK), that she was, *inter alia*, sexually harassed and assaulted by

a co-worker at BBG.  Plaintiff alleges in the present action that Defendants unlawfully facilitated

the alleged sexual harassment, actively attempted to cover up the incidents of harassment,

---

[1] Plaintiff has also asserted a claim under the Privacy Act of 1974, 5 U.S.C. §§ 552(a) *et seq.*  The parties have agreed that this claim is not presently at issue in Plaintiff's Motion for a Temporary Restraining Order.  Accordingly, while cognizant that Plaintiff has asserted a claim under the Privacy Act, that claim is not addressed in the instant Memorandum Opinion.

interfered with the investigation of her administrative complaint, and retaliated against her for complaining about her co-worker's harassing conduct as well as for criticizing BBG's management and mission. Plaintiff further alleges that, as a result of these actions, she has suffered both mental and physical injuries and that BBG and the official capacity Individual Defendants have failed to provide her with a reasonable accommodation for these alleged disabilities.

On May 20, 2010, Plaintiff filed the now pending Motion for a Temporary Restraining Order.[2] On May 24, 2010, prior to resolution of Plaintiff's Motion, Defendants filed a [10] Notice of Related Case, advising Judge Richard W. Roberts, to whom this case was previously assigned, that this action was related to a civil action pending before the undersigned, *Sataki v. Falahati*, Civ. Act. No. 10-466 (CKK). The case was subsequently reassigned to this Court by the Calendar Committee on May 25, 2010, *see* Docket No. [29] (Reassignment of Civil Case), and the Court held an on-the-record conference call with counsel for all parties that same day to discuss Plaintiff's Motion. Plaintiff indicated at that time through her counsel that she wished to proceed directly to consideration of her request for a temporary restraining order. Accordingly, the Court held in abeyance Plaintiff's request for a preliminary injunction and set an expedited briefing schedule for consideration of Plaintiff's request for a temporary restraining order only. Pursuant to that schedule, Defendants filed their Opposition to Plaintiff's Motion on May 27, 2010, and

---

[2] As a result of apparent technologic difficulties experienced by Plaintiff's counsel when filing the Motion, the original version of the Motion filed on May 20, 2010, appears to be missing certain attachments and exhibits. *See* Docket No. [5]. Plaintiff re-filed the Motion, along with a complete set of exhibits, on May 24, 2010. *See* Docket No. [11]. The Court notes that the two motions are substantively identical. Accordingly, for convenience, all citations to Plaintiff's Motion and exhibits in this Memorandum Opinion are to the complete version filed on May 24, 2010. *See* Docket No. [11].

Plaintiff filed her Reply on May 28, 2010. Upon consideration of the parties' filings, the relevant case law and statutory provisions as well as the record of this case as a whole, the Court shall DENY Plaintiff's Motion for a Temporary Restraining. Ultimately, although the Court understands Plaintiff's present health concerns, the Court finds that Plaintiff has not demonstrated on the present record that she is legally entitled to the relief she now seeks. Absent such a showing, the Court cannot grant Plaintiff's request for a temporary restraining order.[3]

## I. BACKGROUND

### A. Factual Background

The Broadcasting Board of Governors is a federal agency responsible for the U.S. Government's international broadcasting. *See Grosdidier v. Chairman, BBG*, 560 F.3d 495, 496 (D.C. Cir. 2009). It manages a network of individual broadcasting services, including the International Broadcasting Bureau, which carries out government-sponsored nonmilitary international broadcasting through the Voice of America ("VOA") and other entities. *See* 22 U.S.C. §§ 6202, 6204, 6206. The Persian News Network ("PNN"), which is under the VOA, provides TV and radio news and information programming to an audience in Iran.

---

[3] Plaintiff has also requested that the Court hold an evidentiary hearing on her Motion for a Temporary Restraining Order so that she may present the live testimony of her treating clinical psychologist. *See* Pl.'s Notice, Docket No. [20]. The Court notes that Defendants have at this time accepted the statements of Plaintiff's treating clinical psychologist as asserted in the declarations attached to Plaintiff's initial application for a temporary restraining order and do not factually dispute any medical conclusions reached by her clinical psychologist in her declaration or attached reports. The Court shall therefore do the same. In addition, although Defendants have not yet had an opportunity to review the newly-submitted declaration from Plaintiff's treating clinical psychologist that was submitted with Plaintiff's Reply, the Court finds that the assertions therein do not materially affect its decision on Plaintiff's request for a temporary restraining order and has therefore accepted such statements for purposes of this Memorandum Opinion as well. *See infra* at p. 13, n. 11. As such, the Court finds that an evidentiary hearing is not necessary for resolution of Plaintiff's Motion for a Temporary Restraining Order.

Plaintiff Elham Sataki is a GS-12 international broadcaster for PNN.  *See* Pl.'s Mot., Ex. 1 (First Declaration of Elham Sataki) (hereinafter, "First Sataki Decl."), ¶ 6; Defs.' Opp'n, Ex. 2 (Declaration of Donna Grace) (hereinafter, "Grace Decl."), ¶ 7.  Her duty station is in Washington, D.C.  Grace Decl. ¶ 7 & Ex. G (SF-50).  Plaintiff began working for PNN as an employee on February 19, 2008.  *See id.*, Ex. G (SF-50).  Plaintiff's responsibilities include reading news segments for the shows "News and Views" and "News Brief," which are both taped in Washington, D.C., as well as performing general assignments, which involves going into the field, conducting interviews, and creating "packages."  *See* Defs.' Opp'n, Ex. 3 (Declaration of Susan Reed Jackson) (hereinafter, "Jackson Decl."), ¶ 3.[4]  Importantly, while Plaintiff's job duties occasionally require her to perform her work duties in the field, the record indicates that Plaintiff has always been assigned to the Washington, D.C. duty station; there is no indication that Plaintiff has been detailed to any other office location nor is there any evidence that she has been permitted to work from another location (e.g., through a telecommuting arrangement, etc.) for any extended period of time.

Since as early as August 2009, Plaintiff has requested to be assigned to Los Angeles, California, where she resided for nearly 10 years prior to accepting her current position with PNN.  *See* Defs.' Opp'n, Ex. 6 (correspondence from Plaintiff to VOA supervisor dated August 26, 2009; January 5, 2010; and January 14, 2010); *see* First Sataki Decl. ¶¶ 3-4.  A separate division of VOA

---

[4] While Plaintiff disputes various statements contained in the Jackson Declaration, she has ***not*** disputed the accuracy of her job duties description provided in Ms. Jackson's declaration. Rather, Plaintiff challenges only Ms. Jackson's assertion that Plaintiff, at present, "does not possess the skills necessary to produce quality broadcast news packages independently," and "is not capable of performing work at a broadcast news industry standard" without "extensive supervision and mentoring."  Jackson Decl. ¶¶ 4-5.  Ultimately, the Court finds that this dispute is immaterial to its decision below.

— the Central News Division (which is not a part of PNN) — has a Los Angeles office that is staffed by two employees, namely, a Supervisory International Radio Broadcaster, GS-13, who serves as a correspondent, and a Program Assistant, GS-9, who produces radio and television transmissions. *See* Defs.' Opp'n, Ex. 8 (Declaration of Jack Payton) (hereinafter, "Payton Decl."), ¶ 2. PNN has occasionally used the Central News Division's studio office to permit its employees in the D.C. office to remotely interview an individual in Los Angeles. *Id.* ¶ 3. In addition, PNN has three contractors located in Los Angeles, two of whom are contract VJs and the third of whom is a web editor, who are allowed to use spare desks located in the Central News Division's Los Angeles office as needed. Payton Decl. ¶¶ 3, 5; *see also* Jackson Decl. ¶ 7. The contractors are not staff but instead work freelance on a day rate and are expected to work independently. Jackson Decl. ¶ 7. PNN does **not** currently have any full time employees in Los Angeles nor does it perform any on-air work in Los Angeles. *Id.* ¶ 8.

Plaintiff does not dispute, nor has she offered any evidence to contradict, Defendants' sworn assertion that PNN does not have any full time employment positions available at VOA's office in Los Angeles. In addition, the Court notes that there is no evidence in the record to indicate that any full-time PNN employee assigned to PNN's Washington, D.C. office has ever been permitted to "telecommute" from VOA's Los Angeles office for extended periods of time. While Plaintiff generally asserts that many of VOA's employees "telecommute to work from all around the nation on a regular basis," Pl.'s Reply at 19-20, there is no indication in the record that any PNN employees assigned to the Washington, D.C. office have been permitted or are otherwise

able to telecommute from VOA's Los Angeles office.[5]

It appears that on some unspecified date in February 2010, Plaintiff voluntarily traveled to Los Angeles, California, for personal reasons using annual leave. While there, Plaintiff asserts that she suffered "a complete nervous breakdown," causing her to become "mentally and physically disabled." *See* Compl. ¶ 6(f). On February 24, 2010, Plaintiff was diagnosed by Dr. Arlene T. Aviera, her treating clinical psychologist, as suffering from a major depressive disorder, who also noted that Plaintiff was suffering from migraine headaches and had a history of a bleeding ulcer with recurring pain. *See* Pl.'s Opp'n, Ex. 6 (medical reports prepared by Dr. Aviera). Dr. Aviera indicated that Plaintiff was unable to work at that time. *Id.*; *see also id.* (first follow-up report by Dr. Aviera dated March 18, 2010, confirming that Plaintiff continued to suffer from a major depressive disorder, but indicating that there had been "some positive shift in [Plaintiff's] depressed mood" and recommending that Plaintiff "continue on disability").

On March 10, 2010, having exhausted all but 4 and 1/4 hours of her annual leave and 4 hours of her sick leave, Plaintiff requested leave under the Family Medical Leave Act and/or advanced annual or sick leave. Defs.' Opp'n, Ex. 4 (Declaration of Lisa Anderson) (hereinafter, "Anderson Decl."), ¶¶ 2-3. PNN provided Plaintiff with advanced annual leave for payperiods 5 and 6, but determined that she was not eligible for advanced sick leave under BBG's human

---

[5] Plaintiff's sole support for her claims that VOA employees are routinely permitted to telecommute is the Second Declaration of AFGE Local 1812 President Timothy E. Shamble. *See* Pl.'s Reply at 20 & Ex. B (Second Declaration of Timothy E. Shamble). While Mr. Shamble recounts several examples of PNN employees at the Washington, D.C., PNN office who have been allowed to relocate to or work from New York, *see id.* ¶¶ 4-6, he does not indicate that any PNN employees have previously been permitted to relocate to or work from the Los Angeles VOA office, *see generally id.* Accordingly, even accepting Mr. Shamble's statements, there is no evidence that PNN employees, like Plaintiff, who are stationed in Washington, D.C., have previously been permitted to telecommute from the VOA office in Los Angeles.

resource policies.  *Id.* ¶¶ 4-5.  Specifically, as BBG advised Plaintiff's counsel, in order to obtain

advanced sick leave, an employee must demonstrate that she will return to duty after the period of

sick leave is completed; because Plaintiff did not provide BBG at that time with any medical

documentation indicating a date by which it was expected that she could return to work after the

period of sick leave was completed, Plaintiff was found to be ineligible for the advanced sick

leave.  *Id.* ¶ 5.[6]  Plaintiff was also found to be ineligible for administrative leave with pay as "[i]t is

not the agency's policy or practice . . . to place administrative employees on administrative leave

based solely on unproven allegations of sexual harassment."  Grace Decl. ¶ 6.[7]  Plaintiff thereafter

applied for BBG's donated leave program and was placed in the program retroactive to February

28, 2010.  Anderson Decl. ¶ 6.  As of May 25, 2010, Plaintiff had received 114 hours of donated

leave, which was given to her for pay periods 5, 6, 7, 8, 9, and 10.  *Id.*  Plaintiff has therefore

---

[6] While Plaintiff contends that Defendants' explanation for denying Plaintiff advanced sick leave is "disingenuous and spurious," Pl.'s Reply at 6, Plaintiff has not offered any evidence contradicting Ms. Anderson's sworn statement that a specific return date is required under BBG policy in order to be eligible for advanced sick leave.  At the time of the March 10, 2010 request, Dr. Aviera had not yet indicated that Plaintiff could return to work and therefore did not provide a specific return date as required.

[7] Plaintiff emphasizes that, by contrast, Defendants have placed her alleged harasser on administrative leave with pay pending completion of the investigation into Plaintiff's allegations of harassment.  According to BBG, the decision to place Plaintiff's co-worker on administrative leave is consistent with the Office of Personnel Management's guidance indicating that "[a] supervisor may use administrative leave to keep an employee away from the worksite to ensure the safety of employees while conducting further investigation and deciding a course of action."  Grace Decl. ¶ 5.  Accordingly, BBG determined that "[i]n order to ensure the safety of other female employees while the agency investigates the[] extremely serious charges [made by Plaintiff], the agency appropriately used administrative leave."  *Id.* ¶ 6.  Plaintiff has not offered any evidence to indicate that Ms. Grace has misstated or mischaracterized the applicable policies on administrative leave.  In addition, while Plaintiff has argued in her Reply that she was wrongfully denied administrative leave with pay, Defendants have not yet had an opportunity to respond to this assertion, which was raised for the first time in Plaintiff's Reply briefing.

continued to obtain some pay — albeit not her full salary — for the time she has been out of the office. *Id.*

On March 25, 2010, BBG's Office of Civil Rights received a complaint from Plaintiff alleging discrimination and reprisal. *See* Defs.' Opp'n, Ex. 1 (EEO Complaint). The complaint was accepted on March 30, 2010, and the claims were revised on April 9, 2010. *See* Defs.' Opp'n, Ex. 5 (Declaration of Michael D. Hill) (hereinafter, "Hill Decl."), ¶ 4. The complaint is currently still within the administrative stage. *Id.* ¶ 5. Nonetheless, Plaintiff filed the instant lawsuit on April 2, 2010. *See* Compl., Docket No. [1].

Plaintiff was authorized by the Chief of Staff for VOA to be detailed to the Middle East Desk at the Central News Division in Washington, D.C., during the course of the investigation into her claims of sexual harassment and retaliation. Defs.' Opp'n, Ex. 7 (Declaration of Barbara N. Brady) (hereinafter, "Brady Decl."), ¶ 2. The detail would permit Plaintiff to continue to conduct the job duties she performed at PNN, such as field reporting and working on packages, although her work would be produced in English. *Id.* ¶ 3. Plaintiff would have reported directly to and been supervised by Central News Division staff. *Id.* The detail was intended to separate Plaintiff from the PNN co-worker whom she alleges sexually harassed and assaulted her as well as her PNN supervisors whom she claims retaliated against her; the Central News Division's Office does not share space with PNN, and VOA offered to work with Plaintiff, through her counsel, to ensure that Plaintiff would not have contact with those accused of the unlawful conduct. *Id.* ¶ 4.

Plaintiff counters that the suggested accommodation is inadequate for two principal reasons. First, Plaintiff asserts in her briefing that she is "not comfortable enough in English" to report in that language. *See* Pl.'s Reply at 13, n. 1. This assertion, however, is made only in

Plaintiff's pleadings, and there is no evidence to support this claim; to the contrary, the only evidence in the record on this point indicates that Plaintiff is fluent in English. *See* First Sataki Decl., Ex. 1 (Plaintiff's resume, indicating that she is able to "fluently speak, read and write" in "Swedish, Persian (Farsi), and English"). Second, Plaintiff asserts that because the Middle East Desk is located in the same building as PNN and shares the same recording studios, walkways and common areas, she will be regularly exposed to her alleged harasser and the PNN managers who have allegedly retaliated against her. *See* Pl.'s Reply at 13, n. 1. Again, however, Plaintiff has not pointed to any evidentiary support in the record for her assertion that she would be "regularly exposed" to the PNN staff if she accepted the Central News Division detail, and such an assertion directly contradicts the sworn statement of Ms. Brady that "[t]here is no shared spaced with the Persian News Network." Brady Decl. ¶ 4. Furthermore, Plaintiff's alleged harasser is currently on administrative leave, and BBG has asked Plaintiff's counsel "to provide suggestions in order to ensure the arrangement would work more efficiently." *Id.* ¶ 4. The record does not indicate that any such suggestions have been provided by Plaintiff, other than the request to work out of the Los Angeles VOA office.

On April 19, 2010, Plaintiff's treating clinical psychologist, Dr. Aviera, provided a follow-up to her previous medical reports indicating that "while the diagnosis of Major Depressive Disorder still holds, [Plaintiff] continues to manifest some psychological improvement." *See* Pl.'s Mot., Ex. 6 (medical reports prepared by Dr. Aviera). Dr. Aviera "recommended that [Plaintiff] return to work on May 5, 2010."[8] *Id.* She indicated that "[a]lthough the depressive symptoms are

_____

[8] It appears that Dr. Aviera subsequently amended her opinion in a memorandum dated May 5, 2010, to state that Plaintiff could not report to work until May 14, 2010. *See* Pl.'s Mot., Ex. 9 (May 12, 2010 Letter from Donna S. Grace to Plaintiff). That memorandum does not

still present, they have subsided enough that [Plaintiff] would be able to carry out her duties,"

assuming that Plaintiff could be placed in "a work environment in which she would not be in the

presence of the individual who harassed her in the past." *Id.* Finally, Dr. Aviera concluded that,

"[i]t is essential in my professional opinion that [Plaintiff] would continue to live in Los Angeles."

*Id.*

Based on this recommendation, on or about May 7, 2010, Plaintiff advised BBG, through

her attorney, that she was prepared to and would report to work, but indicated that she would

report to the VOA office in Los Angeles. *See* Pl.'s Mot., Ex. 9 (May 12, 2010 Letter from Donna

S. Grace, Director of the Office of Human Resources, to Plaintiff's counsel). On May 12, 2010,

Plaintiff was advised by BBG that she should instead report for duty in Washington, D.C. and

noted once again that BBG was willing to place her on detail to the Central News Division in

Washington, D.C. *See id.* She was further informed that failure to report for work in Washington,

D.C. on May 14, 2010, without prior authorization for additional leave, would be grounds for

placing her on Absence Without Leave ("AWOL") status, which could form the basis of

disciplinary action. *See* Pl.'s Mot., Ex. 9 (May 12, 2010 Letter from Donna S. Grace, Director of

the Office of Human Resources, to Plaintiff's counsel).

In response, Plaintiff provided a letter from Dr. Aviera, dated May 13, 2010, in which Dr.

Aviera "strongly recommend[ed]" that Plaintiff be permitted to work in Los Angeles. *See* Pl.'s

Mot., Ex. 9 (May 13, 2010 Letter from Dr. Aviera to Donna S. Grace, Director of the Office of

Human Resources, to Plaintiff's counsel). Dr. Aviera's letter was forwarded by Plaintiff's counsel

to BBG on May 14, 2010, along with an email indicating that Plaintiff would report to the VOA

appear to be in the record now before the Court.

office in Los Angeles. *See* Pl.'s Mot., Ex. 9 (May 14, 2010 emails). On May 18, 2010, BBG sent

a letter to Plaintiff, via counsel, reiterating that no position existed in Los Angeles and indicating

that Plaintiff had been placed on AWOL status in light of her failure to report for duty. *See id.*

(May 18, 2010 Letter from John Lennon to Plaintiff's Counsel). BBG further advised Plaintiff that

her request for a reassignment was not a reasonable accommodation and therefore requested that

Plaintiff state a reasonable accommodation supported with proper medical documentation. *Id.*

At present, Plaintiff remains in Los Angeles and has not reported to work in Washington,

D.C. BBG has recently advised the Court that, in an effort to compromise on the issues raised in

Plaintiff's Motion, it has agreed to place Plaintiff on unpaid leave and therefore no longer

classifies her as AWOL. Defs.' Opp'n at 5 & n. 2. Plaintiff therefore has not been terminated and

thus, unlike a terminated employee, has not lost access to any previously-held health insurance

coverage.

B.    *Procedural History*

As indicated above, Plaintiff filed the instant action on April 2, 2010. *See* Compl., Docket

No. [1]. Plaintiff's Complaint sets forth six causes of action:

- Count I: alleges that Defendants infringed her right to free speech in violation of the First Amendment by retaliating against her for her personal political views, her criticism of VOA's management and failure to adhere to its mission to promote freedom in Iran, and other unspecified speech made at VOA/PNN, Congress, and elsewhere. *Id.* ¶¶ 10-12.

- Count II: alleges that Defendants violated Plaintiff's Fifth Amendment right to due process by "covering up and denying her relief for sexual harassment," "retaliating against her to try and keep her quiet, destroy her mentally and physically and to force her out of PNN/VOA," and by tampering with, intimidating, and obstructing material witnesses to the alleged sexual harassment. *Id.* ¶¶ 14-15.

- Count III: alleges that Defendants impermissibly discriminated against her on the basis of her gender and national origin, facilitated the acts of sexual harassment, and retaliated

against Plaintiff for exercising her constitutional rights in violation of the Fourteenth Amendment's equal protection clause. *Id.* ¶¶ 16-18.

• Count IV: alleges that Defendants violated Plaintiff's Fourth Amendment right to be secure in her person and property by allowing her co-worker to assault and sexually harass Plaintiff and by unlawfully "confiscating" Plaintiff's paychecks. *Id.* ¶¶ 19-22.

• Count V: alleges that Defendants denied Plaintiff's request for a reasonable medical accommodation to be detailed to the VOA Los Angeles office in violation of Section 504 of the Rehabilitation Act of 1983, 29 U.S.C. §§ 701 *et seq*. *Id.* §§ 23-28.

• Count VI: alleges that Defendants failed to timely produce records Plaintiff requested in violation of the Privacy Act of 1974, 5 U.S.C. §§ 552(a) *et seq*. *Id.* ¶¶ 29-31.

Plaintiff seeks, *inter alia*, compensatory and punitive damages and a permanent injunction ordering "that Plaintiff be given 'reasonable medical accommodation' by being detailed and installed permanently" in the Los Angeles office of VOA. *See id.* at p. 21.[9]

On May 20, 2010, Plaintiff filed the now pending Motion for a Temporary Restraining Order and/or Preliminary Injunction. As set forth therein, Plaintiff requests issuance of a temporary restraining order and/or preliminary injunction that, in Plaintiff's words: (1) "restrain[s] [BBG] from preventing Plaintiff from reporting to work immediately at the Los Angeles Office of

_____

[9] On June 1, 2010, Plaintiff filed an [35] Amended Complaint. Plaintiff indicated that she filed the Amended Complaint in order to add an explicit claim for interim injunctive relief during the pendency of an administrative proceeding under *Wagner v. Taylor*, 836 F.2d 566 (D.C. Cir. 1987). *See* Pl.'s Notice, Docket No. [33]; *see also* Am. Compl. ¶¶ 31-33 (adding a claim for "Wagner Temporary Relief" as Count VII). The Court notes that the amendments do not appear to modify or alter Plaintiff's substantive allegations or the allegations asserted in Counts I through VI, as are directly relevant to the pending Motion. As is clear below from the Court's discussion of *Wagner*, *see infra* at pp. 15-17, the Court is already aware of Plaintiff's position that she is entitled to interim injunctive relief under that decision and was prepared to evaluate the merits of Plaintiff's request for interim injunctive relief even prior to Plaintiff's amendments to her Complaint. Accordingly, given this fact and the emergency nature of Plaintiff's Motion for a Temporary Restraining Order, the Court shall refer only to Plaintiff's original Complaint in this Memorandum Opinion. As Plaintiff's amendments do not materially affect the Court's decision herein, doing so does not prejudice Plaintiff and ensures that a ruling is issued on her Motion as expediently as possible.

Voice of America to perform her duties as an international broadcaster in the Persian News Service and be paid her normal salary henceforth as a Grade GS-12;" and (2) "restrain[s] [BBG] from not reimbursing Plaintiff for all back pay[,] used vacation time, and accrued benefits up to and including the present."  Pl.'s Mot., Ex. 1 (Proposed Order).  Despite Plaintiff's attempts to phrase her requested relief as seeking only a passive injunction, it is readily apparent that Plaintiff in fact seeks a mandatory injunction requiring Defendants to affirmatively permit Plaintiff to work from the VOA Los Angeles office.  Plaintiff asserts that such a request is a "reasonable medical accommodation" for Plaintiff's present disability and is therefore required under the Rehabilitation Act.

As indicated previously, the Court held an on-the-record conference call with counsel for all parties on May 25, 2010, to discuss Plaintiff's Motion.  At that time, Plaintiff indicated through counsel that she wished to proceed directly to her request for a temporary restraining order.  Accordingly, the Court indicated that it would hold her request for a preliminary injunction in abeyance and set an expedited briefing schedule for consideration of Plaintiff's request for a temporary restraining order only.  Pursuant to that schedule, Defendants filed their Opposition to Plaintiff's Motion on May 27, 2010,[10] and Plaintiff filed her Reply on May 28, 2010.[11]

_____

[10] Defendants also filed a [31] Motion to Dismiss in Part or in the Alternative for Partial Summary Judgment simultaneously with their Opposition.  Defendants' motion is not addressed herein.

[11] In filing her Reply, Plaintiff attached a series of new declarations in support of her Motion for a Temporary Restraining Order and/or Preliminary Injunction.  Pursuant to Local Civil Rule 65.1, applications for a preliminary injunction must be "accompanied by *all* affidavits on which the plaintiff intends to rely."  LCvR 65.1(c) (emphasis added).  "Supplemental affidavits [] to the application . . . may be filed only with permission of the court."  *Id.*  Plaintiff did not seek leave of the Court to file the additional materials with her Reply.  The materials were therefore filed in violation of the local rules.  The Court has nonetheless reviewed the

## II. LEGAL STANDARDS AND DISCUSSION

"The standard for issuance of the 'extraordinary and drastic remedy' of a temporary restraining order or a preliminary injunction is very high, and by now very well established." *RCM Techs., Inc. v. Beacon Hill Staffing Grp., LLC*, 502 F. Supp. 2d 70, 72-73 (D.D.C. 2007) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The moving party must show: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Hall v. Daschle*, 599 F. Supp. 2d 1, 6 n.2 (D.D.C. 2009) ("[t]he same standard applies to both temporary restraining orders and to preliminary injunctions"). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

In applying this four-factored standard, district courts may employ a sliding scale as to which a particularly strong showing in one area can compensate for weakness in another area. *Id*. (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)). Thus, "[a]n injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed*., 58 F.3d at 747. Notwithstanding the fluid nature of this familiar four-part inquiry, "[i]t is particularly important for the [movant] to demonstrate a substantial likelihood of success on the

---

attached declarations and finds that consideration of the assertions set forth therein does not alter its decision as set forth below.

merits." *Barton v. District of Columbia,* 131 F. Supp. 2d 236, 242 (D.D.C. 2001) (citing *Benten v. Kessler,* 505 U.S. 1084, 1085 (1992)). If the movant fails to do so, inquiry into the remaining factors is unnecessary, for the injunctive relief must be denied on that ground alone. *See Transohio Sav. Bank v. Dir., Off. of Thrift Supervision,* 967 F.2d 598, 614 (D.C. Cir.1992) (affirming denial of preliminary injunction where the district court properly concluded that the plaintiff had "no likelihood of success on the merits"); *Katz v. Georgetown Univ.,* 246 F.3d 685, 688 (D.C. Cir. 2001) ("although we apply a four-factor test in weighing a request for a preliminary injunction, such relief never will be granted unless a claimant can demonstrate 'a fair ground for litigation'"); *Taylor v. Resolution Trust Corp.,* 56 F.3d 1497, 1507 (D.C. Cir. 1995) ("Given the inadequacy of [plaintiff]'s prospects for success on the merits, there may be no showing of irreparable injury that would entitle him to injunctive relief."), *amended on other grounds on reh'g,* 66 F.3d 1226 (D.C. Cir. 1995). Applying these standards to the case at hand, the Court finds that Plaintiff has failed to demonstrate that she is entitled to a temporary restraining order on the present record.[12]

---

[12] For this reason, the Court therefore declines to decide whether Plaintiff must meet an even higher burden of proof than outlined above because she is requesting mandatory injunctive relief — i.e., because she seeks to change the status quo through affirmative action rather than to merely preserve the status quo. *See* Defs.' Opp'n at 19 (urging Court to apply higher standard to Plaintiff's request for mandatory relief). This remains an open question in this Circuit. *See Farris v. Rice,* 453 F. Supp. 2d 76, 79 (D.D.C. 2006) (noting that the "D.C. Circuit . . . has not yet adopted or, for that matter, rejected th[e] rule" requiring a movant who seeks a mandatory injunction to meet a higher standard than in the ordinary case). While the Court agrees with Defendants that Plaintiff's request is properly characterized as seeking a mandatory injunction, the Court finds that Plaintiff has failed to show that the requested relief is warranted even under the ordinary standard set forth above. Similarly, although not raised by either party, the Court notes that some courts in this Circuit have also applied a higher standard to motions for preliminary injunctive relief in employment discrimination cases against the federal government. *See, e.g., Jordan v. Evans,* 355 F. Supp. 2d 72, 77 (D.D.C. 2004) (holding that "a plaintiff seeking injunctive relief in a Title VII discrimination action against the federal government must

Before turning to consider the facts of this case under the test outlined above, the Court pauses briefly to address the issue of its jurisdiction to entertain Plaintiff's request for interim injunctive relief. As is discussed in more detail below, Plaintiff did not exhaust her administrative remedies prior to filing suit. While Plaintiff's failure to exhaust will, as Defendants argue, bar this Court from deciding the merits of Plaintiff's claims, *see generally* Defs.' MTD, it does not necessarily deprive the Court of jurisdiction over Plaintiff's Motion for a Temporary Restraining Order. As the D.C. Circuit has made clear, "federal district courts are authorized to afford interim injunctive relief against retaliatory transfer and other acts of reprisal while the administrative and judicial processes are ongoing." *Wagner v. Taylor*, 836 F.2d 566, 570 (D.C. Cir. 1987). Accordingly, if "the court may eventually have jurisdiction of the substantive claim, the court's incidental equitable jurisdiction, despite the agency's primary jurisdiction, gives the court authority to impose a temporary restraint in order to preserve the ***status quo*** pending ripening of the claim for judicial review." *Id.* at 571 (emphasis added).

Plaintiff has relied on the D.C. Circuit's decision in *Wagner* for the assertion that this Court has the authority to issue interim injunctive relief in this case. Defendants appear not to directly contest this point, acknowledging that "[c]ourts in this district have occasionally exercised their powers to fashion interim injunctive relief in employment discrimination cases prior to the completion of the administrative process." Defs.' Opp'n at 19. As Defendants correctly

make 'a more stringent showing of irreparable injury' and demonstrate that 'civil rights claims take precedence over the government's interest in making personnel decisions.'") (quoting *Bonds v. Heyman*, 950 F. Supp. 1201, 1212 (D.D.C. 1997), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)). It appears, however, that the D.C. Circuit has yet to decisively resolve this issue. Accordingly, because the Court finds — as indicated above — that Plaintiff fails to meet the traditional showing required, it need not determine at this time whether a higher standard should apply for this reason as well.

emphasize, however, the authority to issue such relief arises from the Court's "'limited judicial power to preserve [its] jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels.'" *Wagner*, 836 F.2d at 571 (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966)). Here, Plaintiff seeks to ***alter*** the status quo. Despite Plaintiff's repeated attempts to characterize the relief sought as "preserv[ing] the status quo," Pl.'s Reply at 2, it is patently clear that she seeks mandatory injunctive relief ordering Defendants to affirmatively permit Plaintiff — who was not previously detailed to nor permitted to telecommute from the VOA's Los Angeles Office — to work from Los Angeles during the course of administrative and/or litigation proceedings. Given the particular circumstances of this case, the Court's jurisdiction to issue such mandatory relief is not entirely clear and the parties themselves have not sufficiently briefed the issue. Nonetheless, given the emergency nature of Plaintiff's request for a temporary restraining order and the Court's decision below that the requested relief is not warranted in this case, the Court need not affirmatively resolve this issue at this time. As the D.C. Circuit made clear in *Wagner*, even if the Court has jurisdiction to award the requested interim injunctive relief, it may do so ***only*** if "the prerequisites for equitable intervention are met." 836 F.2d at 575.[13] Accordingly, because Plaintiff has failed to demonstrate that those prerequisites have been met in this case, the issuance of a temporary restraining order is not appropriate. On the present record, Plaintiff has not demonstrated a substantial likelihood of success on the merits.

---

[13] Plaintiff argues, without citation to any supporting legal authority, that "under the analysis of the *Wagner* court, for interim injunctive relief to issue, the first part of the test for equitable relief is virtually non-existent: likelihood of success on the merits." Pl.'s Reply at 8. This unsupported assertion, however, is contrary to the *Wagner* decision itself, which made clear that a court must evaluate a request for interim injunctive relief under the traditional four-prong test. *See* 836 F.2d at 575-76.

**A.** **Plaintiff Has Not Demonstrated A Substantial Likelihood Of Success As To Her Rehabilitation Act Claim And Her Request For A "Reasonable Accommodation"**

Key to Plaintiff's request for a temporary restraining order, the Court finds that she is unlikely to succeed on her claim under the Rehabilitation Act for a reasonable accommodation. This claim forms the substantive basis for Plaintiff's request — in both her Motion for a Temporary Restraining Order as well as in her Complaint — for an order mandating Defendants to authorize Plaintiff to work from Los Angeles during the pendency of any administrative or litigation proceedings and to pay Plaintiff any owed salary and benefits. Significantly, however, Plaintiff is unable to demonstrate that she has a substantial likelihood of success as to this principal claim underlying her pending request for interim injunctive relief.

Pursuant to the Rehabilitation Act, federal employers are required to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (incorporated into the Rehabilitation Act by 29 U.S.C. § 791(g)). Plaintiff has failed to state a meritorious claim under the Rehabilitation Act for two principal reasons.[14] First, Plaintiff has asserted her claim under Section 504 of the

_____

[14] In addition to the two reasons set forth above, the Court notes that Plaintiff has also failed to exhaust her administrative remedies. Hill Decl. ¶¶ 4-5 (indicating that Plaintiff filed a complaint with the Office of Civil Rights less than two weeks before this lawsuit was filed, which complaint remains pending at the administrative level). As such, the Court lacks jurisdiction to review the merits of her claim under the Rehabilitation Act. *See Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (administrative exhaustion under the Rehabilitation Act is a jurisdictional requirement). While the D.C. Circuit indicated in *Wagner* that the failure to exhaust administrative remedies in a Title VII discrimination action is not dispositive in considering a request for interim injunctive relief during the pendency of administrative proceedings, 836 F.2d at 575, the D.C. Circuit has not explicitly extended that holding to a federal employee's disability claims brought under the Rehabilitation Act. There are important distinctions between Title VII and the Rehabilitation Act that may militate against such an extension; for example, administrative exhaustion under the Rehabilitation Act, but not Title VII, is jurisdictional. *See Spinelli*, 446 F.3d at 162. Nonetheless, for purposes of this Memorandum

Rehabilitation Act. Compl. ¶ 24. The D.C. Circuit has made clear, however, that Section 501 of

the Rehabilitation Act provides the exclusive remedy for federal employees alleging disability

discrimination; "[S]ection 504 does not provide federal employees an 'alternative route for relief

under the Rehabilitation Act.'" *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003). Plaintiff's

claim under Section 504 therefore fails.

Second, even assuming Plaintiff had alleged a proper claim under Section 501 of the

Rehabilitation Act, such a claim is nonetheless unlikely to succeed for several reasons. For

purposes of this discussion, the Court accepts as true all statements contained in the medical

documentation submitted by Plaintiff in support of her Motion for a Temporary Restraining Order.

It remains clear, however, that Plaintiff is unlikely to prevail on her claim based on the evidence in

the present record. In order to ultimately succeed on her claim under the Rehabilitation Act,

Plaintiff must show that she was disabled. *Desmond v. Mukasey*, 530 F.3d 944, 952-53 (D.C. Cir.

2008).[15] Given Plaintiff's assertion that she can successfully perform the functions of her job in

Los Angeles (i.e., outside the allegedly negative atmosphere currently existing at the Washington,

D.C. office of PNN), it is unlikely that Plaintiff can demonstrate that she is disabled under the Act.

*See, e.g., Haynes v. Williams*, 392 F.3d 478, 483 (D.C. Cir. 2004) ("If the impact of an impairment

---

Opinion, the Court shall assume without deciding that the decision in *Wagner* may be
appropriately extended to Rehabilitation Act claims as well.

[15] Congress recently made significant changes to the Rehabilitation Act and the
Americans with Disabilities Act effective January 1, 2009. *See* ADA Amendments Act of 2008,
Pub.L. No. 110-325, 122 Stat. 3553 (2008). The purpose of the amendments was in part to
overturn various Supreme Court decisions that Congress viewed as impermissibly narrowing the
broad scope of protection afforded under the American with Disabilities Act. *See id.* The Court
emphasizes that Plaintiff has not argued that the ADA Amendments Act of 2008 impact
Defendants' analysis of Plaintiff's claim under the Rehabilitation Act nor has Plaintiff otherwise
briefed whether the changes affect her Rehabilitation Act claim.

can be eliminated by changing the address at which an individual works, that impairment is neither permanent nor long term."); *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 84-85 (D.D.C. 2009) (finding that plaintiff was not disabled where he indicated that he could successfully perform the duties of his job in another location); *Rand v. Geithner*, 609 F. Supp. 2d 97, 103-04 (D.D.C. 2009) (finding impairment that only limited plaintiff's ability to work in a specific location was not a disability within the meaning of the Rehabilitation Act).

Regardless, even if Plaintiff can demonstrate that she is disabled, she is unlikely to succeed in demonstrating that Defendants failed to reasonably accommodate her disability. Section 501(b) of the Rehabilitation Act requires "federal agencies to reasonably accommodate the disabilities of otherwise qualified employees unless doing so would cause an undue hardship to the agency." *Porter v. Jackson*, 668 F. Supp. 2d 22, 233 (D.D.C. 2009). A reasonable accommodation is defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). In order to determine the appropriate reasonable accommodation, the agency should "initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation," which "process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* § 1630.2(o)(3). "[A]n employer is not required to provide an employee that accommodation [s]he requests or prefers; the employer need only provide some reasonable accommodation." *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (citations omitted).

In this case, the record indicates that BBG has, as it should have, initiated an interactive

process with Plaintiff to determine an appropriate reasonable accommodation. While Plaintiff has consistently insisted that the only acceptable solution is to permit her to relocate to or telecommute from the Los Angeles area, the evidence in the present record indicates that this request is not a reasonable accommodation under Rehabilitation Act case law for two reasons. First, it does not appear from the record now before the Court that Plaintiff can perform the essential functions of her job from Los Angeles. As indicated above, Plaintiff's responsibilities in her current position include reading news segments for the shows "News and Views" and "News Brief," which are both taped in Washington, D.C., as well as performing general assignments, which involves going into the field, conducting interviews, and creating "packages." Jackson Decl." ¶ 3. Given the absence of any full time PNN employees or support staff in Los Angeles and the fact that PNN does not perform any on-air work in Los Angeles, *id.* ¶ 8, Plaintiff is likely unable to perform her present responsibilities from the VOA Office in Los Angeles. Indeed, Plaintiff appears to recognize as much, indicating that she is "willing to do any work that is available in the Los Angeles office of VOA" and proposing that she be permitted to "do the work of the contractors in Los Angeles." Second Sataki Decl. ¶ 9. BBG, however, "is not obligated to 'bump' another employee in order to create a vacancy for the disabled employee" nor is it obligated "to create a new position for the disabled employee." *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1998).

Second, the requested accommodation is likely to cause BBG undue hardship for these very same reasons. *See, e.g., Bowden v. Clough*, 658 F. Supp. 2d 61, 93 (D.D.C. 2009) (plaintiff's request was not a reasonable accommodation and would cause undue hardship to employer "given that [the agency] may not have the technological or personnel resources to accommodate the

plaintiff's desire" to attend meetings remotely). In this case, there is no evidence in the record that PNN has the technological capabilities or resources to permit Plaintiff to telecommute from Los Angeles. Despite Plaintiff's general assertion that many of VOA's employees "telecommute to work from all around the nation on a regular basis," Pl.'s Reply at 19-20, there is no evidence that any PNN employee assigned to the Washington, D.C. office has been permitted or is otherwise able to telecommute from the Los Angeles VOA office. The Court emphasizes that it does not, at this time, make any findings as to whether the accommodation offered by BBG is sufficient under the Act; rather, it finds only that Plaintiff has not demonstrated that she is likely to prevail on her claim that she is entitled to work from Los Angeles under the Rehabilitation Act.

    B.    *Plaintiff's Constitutional Claims*

    In addition, Plaintiff is unlikely to succeed on her constitutional claims, which, along with her Rehabilitation Claim, appear to form the basis for Plaintiff's request for interim injunctive relief in the form of an order mandating Defendants immediately pay Plaintiff any salary and benefits owed. First, to the extent Plaintiff's constitutional claims seek to challenge the alleged national origin and sex-based discrimination, hostile work environment, sexual harassment, and retaliation, her claims are preempted by Title VII. As the Supreme Court has made clear, Title VII is the "exclusive remedy" for federal employees seeking to challenge employment discrimination based upon their race, national origin, color or sex, and to challenge any reprisal for the employee's protected EEO activity. *Brown v. General Serv. Admin*, 425 U.S. 820, 821 (1976); *see also Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983) ("Title VII constitutes the exclusive remedy for claims of employment discrimination by federal employees subject to its protection") (internal quotation marks omitted). For this reason, the D.C. Circuit "has repeatedly held that

federal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII." *Ethnic Employees of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985); *see also Kizas*, 707 F.2d at 543 (federal employees "may not circumvent the 'careful and thorough remedial scheme' Congress ordered for them") (quoting *Brown*, 425 U.S. at 833). Accordingly, Title VII bars all of Plaintiff's constitutional claims against BBG (and any claims against the Individual Defendants in their official capacity), as asserted in Counts II, III, and IV, to the extent they are based on allegations that Plaintiff was discriminated against in her job.

Second, Plaintiff cannot succeed on Count I of her Complaint, which alleges that Defendants infringed her right to free speech in violation of the First Amendment by retaliating against her for her personal political views, her criticism of VOA, and other unspecified speech made at VOA/PNN, Congress, and elsewhere. This claim is barred by the Civil Service Reform Act ("CSRA"), which requires Plaintiff first exhaust her administrative remedies as a jurisdictional prerequisite to bringing suit. *Convertino v. U.S. Dep't of Justice*, 393 F. Supp. 2d 42, 47 (D.C. Cir. 2005). Significantly, there is no allegation that Plaintiff herself has even initiated the administrative proceedings by filing a complaint with the Office of Special Counsel with respect to her allegations in her Complaint. *See* 5 U.S.C. § 1214.

Third, Plaintiff cannot succeed on her claims for damages against BBG and the official-capacity Defendants to the extent that they are based on alleged violations of her constitutional rights as there is no damages remedy against federal agencies (or official capacity defendants) for alleged constitutional remedies. *Taylor v. FDIC*, 132 F.3d 753, 768 (D.C. Cir. 1997). She is similarly unlikely to succeed on her claims for monetary damages against the Individual

Defendants in their individual capacities. *See Bush v. Lucas*, 462 U.S. 367, 368 (1983) (declining to recognize a *Bivens* claim for federal employees whose First Amendment rights are violated by their superiors); *Kittner v. Gates*, __ F. Supp. 2d __, 2010 WL 1704182, * 8 (D.D.C. April 28, 2010) (noting that the D.C. Circuit "has declined to extend *Bivens* remedies to constitutional claims arising from wrongs covered by Title VII, the Privacy Act, and the Civil Service Reform Act" and citing cases). Plaintiff has therefore failed to demonstrate a substantial likelihood of success as to the merits of her remaining claims as well.

Because Plaintiff has failed to demonstrate a substantial likelihood of success on the merits, the Court's inquiry is at an end. As the D.C. Circuit has observed, "[g]iven the inadequacy of [Plaintiff's] prospects for success on the merits, there may be no showing of irreparable injury that would entitle him to injunctive relief," and the Court's inquiry need go no further. *Taylor*, 56 F.3d at 1507. Accordingly, although the Court understands Plaintiff's present health concerns, absent a showing that she is legally entitled to the particular injunctive relief she seeks, the Court must DENY Plaintiff's Motion for a Temporary Restraining Order.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Temporary Restraining is DENIED insofar as the motion seeks issuance of a temporary restraining order. An appropriate Order accompanies this Memorandum Opinion.

Date: June 1, 2010

/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge