**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ELHAM SATAKI,

    Plaintiff,

    v.

BROADCASTING BOARD OF
GOVERNORS, *et al.*,

    Defendants.

Civil Action No. 10-534 (CKK)

**MEMORANDUM OPINION**
(October 13, 2010)

Currently pending before the Court is Plaintiff Elham Sataki's [66] Motion to Disqualify

this Court pursuant to 28 U.S.C. § 144. This is, in effect, Plaintiff's second attempt to disqualify

the Court based on allegations that certain of the Court's rulings, combined with the fact that the

undersigned was appointed by former President William J. Clinton and is allegedly affiliated

with the Democratic party, are evidence that the Court has an extrajudicial bias or prejudice

against her counsel of record, Larry Klayman, which has in turn prejudiced the Court against her

as his client. The Court has previously made clear that such allegations are legally insufficient to

support disqualification. Plaintiff's most recent filings offer no new authority to the contrary.

Accordingly, upon a searching review of Plaintiff's Motion and the parties' respective responses,

the relevant case law and statutory authority, and the entire record as a whole, the Court shall

DENY Plaintiff's [66] Motion to Disqualify the Court pursuant to 28 U.S.C. § 144. The Court

has also conducted its own independent review of the record and is satisfied that no reasonable

and informed observer would question this Court's impartiality. Accordingly, for the reasons set

forth below, the Court concludes that recusal is neither required nor warranted in this case.

# I. BACKGROUND

The Court shall assume familiarity with its prior decisions in this case, which set forth in detail the factual background and procedural history of this case, and shall therefore provide only a brief summary of the instant action as is necessary to provide context for resolution of the motion now before the Court. *See Sataki v. Broadcasting Board of Governors*, __ F. Supp. 2d __, 2010 WL 2195799 (D.D.C. June 1, 2010); *Sataki v. Broadcasting Board of Governors*, __ F. Supp. 2d __, 2010 WL 2679893 (D.D.C. July 7, 2010); *Sataki v. Broadcasting Board of Governors*, __ F. Supp. 2d __, 2010 WL 2679901 (D.D.C. July 7, 2010). This case stems from allegations that Plaintiff was sexually harassed and assaulted by a co-worker at the Persian News Network and that her employer, the Broadcasting Board of Governors ("BBG"),[1] as well as several members and employees of the BBG, unlawfully facilitated the alleged sexual harassment, actively attempted to cover up the incidents of harassment, interfered with the investigation of her administrative complaint, and retaliated against her for complaining about her co-worker's harassing conduct as well as for criticizing BBG's management and mission.

Plaintiff filed a series of administrative and legal complaints seeking review of her allegations of harassment and retaliation — including the instant lawsuit, which was filed on April 2, 2010. The case was initially assigned to another trial judge, but was eventually reassigned to this Court by the Calendar Committee on May 25, 2010, as a related action to a case then-pending before this Court. *See* Docket No. [29] (Reassignment of Civil Case). Plaintiff is represented in this civil action by Larry Klayman, her counsel of record. She has

---

[1] The Broadcasting Board of Governors is the federal agency responsible for management of the Persian News Network.

named as Defendants BBG and several members and employees of the BBG, both in their

official as well as their individual capacities (collectively with BBG, "Defendants"). As set forth

in Plaintiff's initial complaint, she alleges that Defendants violated her constitutional rights under

the First, Fourth, Fifth, and Fourteenth Amendments as well as under the Privacy Act of 1974, 5

U.S.C. §§ 552a *et seq.*, and failed to provide her with a reasonable accommodation in violation

of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*. *See* Compl., Docket No. [1].

Plaintiff amended her complaint on June 1, 2010, to add a claim for interim injunctive relief

pursuant to the D.C. Circuit's decision in *Wagner v. Taylor*, 836 F.2d 566 (D.C. Cir. 1987). *See*

Am. Compl., Docket No. [35].

On May 20, 2010, Plaintiff filed a Motion for a Temporary Restraining Order and/or

Preliminary Injunction. *See* Docket No. [11]. By Memorandum Opinion and Order dated June

1, 2010, this Court denied Plaintiff's request for a temporary restraining order. *See Sataki v.*

*Broadcasting Board of Governors*, __ F. Supp. 2d __, 2010 WL 2195799 (D.D.C. June 1, 2010).

The parties subsequently advised the Court that they had been unable to reach an agreement that

would consolidate consideration of Plaintiff's request for a preliminary injunction with the merits

of her underlying claims, and the parties therefore proposed an expedited briefing schedule for

resolution of Plaintiff's preliminary injunction motion. Pursuant to that schedule, Plaintiff filed a

Supplemental Memorandum in Support of Motion for Preliminary Injunction on June 11, 2010,

and the parties' briefing on Plaintiff's request for a preliminary injunction was fully completed

by June 30, 2010.

As is of particular relevance to the instant Motion, on June 9, 2010, prior to the filing of

Plaintiff's supplemental preliminary injunction briefing, Plaintiff filed a "Motion and

Memorandum to Chief Judge and Judge Kollar-Kotelly to Reassign and Remand Case, by

Consent or Otherwise, to Prior Trial Judge Richard W. Roberts, or in the Alternative, to Assign

Sataki Cases to Another Trial Judge Through Random Assignment System" (hereinafter, "Pl.'s

Mot. to Reassign"). *See* Docket No. [42]. As set forth therein, Plaintiff alleged that certain of

the Court's rulings, combined with the fact that the undersigned had been appointed to the

federal bench by former President William J. Clinton and was allegedly affiliated with the

Democratic party, evidenced bias by the Court against her counsel, Larry Klayman; for this

reason, Plaintiff requested that this Court, or alternatively, Chief Judge Royce C. Lamberth,

reassign this case to a different trial judge. *See id.* Defendants opposed the request.

By Memorandum Opinion and Order dated July 7, 2010, the Court denied Plaintiff's

Motion to Reassign. *See Sataki v. Broadcasting Board of Governors*, __ F. Supp. 2d __, 2010

WL 2679893 (D.D.C. July 7, 2010). The Court found that Plaintiff had failed to identify any

legitimate grounds warranting reassignment of this case. *See id.* at *2-3. In addition, the Court

found that the motion, although framed as a request for reassignment under the local rules, could

also be construed as seeking recusal of the Court pursuant to 28 U.S.C. § 455. *Id.* at *3.

Cognizant that "section 455 'imposes a duty directly upon the judge to evaluate [her] own

conduct," the Court proceeded to consider Plaintiff's allegations to determine whether recusal

was warranted under either section 455(a) or 455(b), notwithstanding the ambiguity in Plaintiff's

motion. *Id.* The Court ultimately concluded that "recusal [was] neither warranted nor required,

whether Plaintiff's claims of bias are examined singly or as a whole." *Id.* at *6.

By Memorandum Opinion and Order that same day, the Court also denied Plaintiff's

request for a preliminary injunction. *See Sataki v. Broadcasting Board of Governors*, __ F.

Supp. 2d __, 2010 WL 2679901 (D.D.C. July 7, 2010). Significantly, Plaintiff did *not* appeal the Court's decision denying her request for a preliminary injunction.

On July 26, 2010, Plaintiff filed the now-pending [66] Motion to Disqualify this Court pursuant to 28 U.S.C. § 144. Two days later, on July 28, 2010, Plaintiff filed a Notice of Voluntarily Dismissal, in which she voluntarily dismissed the majority of her claims in this case. Defendants have since filed an Opposition to Plaintiff's Motion to Disqualify, *see* Docket No. [69], and Plaintiff has filed a Reply, *see* Docket No. [74]. Accordingly, the Motion to Disqualify is now fully briefed and ripe for this Court's resolution.

## II. LEGAL STANDARD AND DISCUSSION

To recuse a judge under section 144, a litigant must submit, along with its motion, an affidavit stating "the facts and the reasons for [its] belief that bias or prejudice exists." 28 U.S.C. § 144. Upon the filing of a "timely and sufficient affidavit," section 144 mandates that the assigned "judge shall proceed no further, but another judge shall be assigned to hear such proceeding." *Id.*; *see also Bhd. of Locomotive Firemen and Enginemen v. Bangor & Aroostook R.R. Co.*, 380 F.2d 570, 576 (D.C. Cir. 1967) ("The disqualification statute, 28 U.S.C. § 144, is mandatory and automatic, requiring only a timely and sufficient affidavit alleging personal bias or prejudice of the judge."). "Importantly, the mere fact that a party has filed a § 144 motion, accompanied by the requisite affidavit and certificate of counsel, does not automatically result in the challenged judge's disqualification." *Robertson v. Cartinhour*, 691 F. Supp. 2d 65, 77 (D.D.C. 2010); *see also United States v. Miller*, 355 F. Supp. 2d 404, 405 (D.D.C. 2005) ("disqualification is not automatic upon submission of affidavit and certificate"). Rather, recusal is required *only* upon the filing of a "timely and sufficient affidavit." 28 U.S.C. § 144.

The question of whether the motion and supporting affidavit is both timely and legally sufficient is for this Court to determine in the first instance. *See United States v. Haldeman*, 559 F.2d 31, 131 (D.C. Cir. 1976) ("It is well settled that the involved judge has the prerogative, if indeed not the duty, of passing on the legal sufficiency of a Section 144 challenge."); *see also United States v. Heldt*, 668 F.2d 1238, 1272 n.69 (D.C. Cir. 1981) (noting that "under section 144 . . . the transfer to another judge for decision is 'at most permissive'") (quoting *Haldeman*, 559 F.2d at 131). First, with respect to the timeliness of the motion, section 144 is itself silent as to "what the timeliness requirement means where, as in this case, the recusal motion rests on events occurring after proceedings began." *S.E.C. v. Loving Spirit Found., Inc.*, 392 F.3d 486, 492 (D.C. Cir. 2004). In such circumstances, courts "have required the affidavit to be filed 'at the earliest moment.'" *Id.* As the D.C. Circuit has made clear, the timeliness requirement is "[c]rucial to the integrity of the judicial process," as it "ensures that a party may not wait and decide whether to file based on 'whether he likes subsequent treatment that he receives.'" *Id.* (quoting *In re United Shoe Mach. Corp.*, 276 F.2d 77, 79 (1st Cir. 1960)).

Second, in determining whether the affidavit sets forth a legally sufficient basis for disqualification, the Court "must accept the affidavit's factual allegations as true even if the judge knows them to be false." *Loving Spirit Found.*, 392 F.3d at 496; *see also United States v. Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965) ("when presented with an application and affidavit such as this one, a Court may not pass upon the truth or falsity of the allegations, but must accept them as true for the purpose of determining the legal sufficiency of the affidavit"). However, the affidavit "must state facts as opposed to conclusions, and while the information and belief of the affiant as to the truth of the allegations are sufficient, mere rumors and gossip

are not enough." *Hanrahan*, 248 F. Supp. at 474 (internal citations omitted). "The identifying facts of time, place, persons, occasion and circumstances must be set forth, with at least that degree of particularity one would expect to find in a bill of particulars." *Id.* (internal citations omitted). Importantly, given the requirement that the Court accept the facts stated in the affidavit as true, the statute mandates that "the attorney presenting the motion [] sign a certificate stating that both the motion and declaration are made in good faith." *Loving Spirit Found.*, 392 F.3d at 496; *see* 28 U.S.C. § 144 (requiring that the affidavit "be accompanied by a certificate of counsel of record stating that it is made in good faith"). The certification requirement is key to the integrity of the recusal process and "guard[s] against the removal of an unbiased judge through the filing of a false affidavit." *Loving Spirit Found.*, 392 F.3d at 496.

Once it is established that the affidavit has been properly certified by counsel of record and that the facts set forth therein have been stated with sufficient particularity, the Court must then

> ascertain[] whether these facts would fairly convince a sane and reasonable mind that the judge does in fact harbor the personal bias or prejudice contemplated by the statute. It is well established that the facts must give fair support to the charge of a bent mind that may prevent or impede impartiality. The basis of the disqualification is that personal bias or prejudice exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. The factual allegations must establish by more than a prima facie case, but not beyond a reasonable doubt that the mind of the judge is closed to justice; that the judge has a personal bias or prejudice against the affiant which is of such a nature, and of such intensity, that it would render the judge unable to give the affiant the fair trial to which every litigant is entitled. Obviously, such a showing could rarely be made.

*Hanrahan*, 248 F. Supp. at 475-76 (internal citations and quotations omitted). "Importantly, to be disqualifying, the alleged bias usually 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in

the case.'" *Robertson*, 691 F. Supp. 2d at 78 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)); *see also Liteky v. United States*, 510 U.S. 540, 554 (1994) (predispositions developed during proceedings are rarely sufficient). For the reasons set forth below, the Court finds that the Motion to Disqualify and supporting Affidavit are both untimely and legally insufficient to support disqualification.

A.   *The Affidavit Submitted by Plaintiff's Counsel of Record Does Not Comply with the Statutory Requirements of Section 144*

1.   Section 144 Requires that a Party, and Not Counsel, Submit the Affidavit in Support of Disqualification

Plaintiff has submitted an Affidavit executed by her attorney, Larry Klayman, in support of her Motion to Disqualify. The Court notes that section 144 provides for disqualification "[w]henever a *party* to any proceeding in a district court makes and files a timely and sufficient affidavit." 28 U.S.C. § 144 (emphasis added). Thus, the plain language of the statute requires that affidavits in support of a motion to disqualify under section 144 be submitted by a party to the litigation and not by counsel. Although this particular issue has not yet been addressed by any court in this Circuit, it has been discussed by several courts in other jurisdictions, which have overwhelmingly held that the plain language of section 144 requires the affidavit to be executed by a party to the litigation; affidavits submitted and signed by the party's attorney are therefore legally insufficient. *See, e.g.*, *Pomeroy v. Merritt Plaza Nursing Home, Inc.*, 760 F.2d 654, 658-59 (5th Cir. 1985) ("A court may not grant relief under § 144 if a party's counsel instead of the party executes an affidavit alleging personal bias or prejudice."); *Roberts v. Bailar*, 625 F.2d 125, 128 (6th Cir. 1980) (finding that motion to recuse under section 144 was "invalid . . . from the time that it was filed" where "plaintiff's counsel, not plaintiff, signed and filed the affidavit that

8

accompanied the motion"); *United States ex. rel. Wilson v. Coughlin*, 472 F.2d 100, 104 (7th Cir. 1973) (finding section 144 motion insufficient where "[t]he motion was supported by an affidavit of one of the attorneys for respondent rather than the affidavit of a 'party' as required by the statute"); *Giebe v. Pence*, 431 F.2d 942, 943 (9th Cir. 1970) (per curiam) (explicit language of section 144 requires party to file affidavit and affidavit by attorney is not sufficient); *Paschall v. Mayone*, 454 F. Supp. 1289, 1300 (S.D.N.Y. 1978) (affidavit deficient where filed by counsel, not party to proceeding). Upon review of the relevant statutory provision and the decisions cited above, the Court is persuaded that the plain language of section 144 requires that the affidavit submitted in support of disqualification be executed by a *party* to the litigation. In this case, the Affidavit submitted by Plaintiff in support of her Motion to Disqualify was executed and signed by her attorney, who is not a party to this proceeding. Accordingly, the Court finds that the Affidavit is not legally sufficient to support the Motion to Disqualify under section 144.

    2.     <u>Section 144 Requires Counsel of Record to Certify that Both the Motion to Disqualify and the Supporting Affidavit are Made in Good Faith</u>

In addition, the Court notes that section 144 requires that a party's affidavit submitted in support of a motion for disqualification "be accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144. The certification requirement is not simply a pro forma procedural obligation but is key to the integrity of the recusal process. Because the Court must accept as true all factual allegations asserted in the affidavit, even if the Court knows such allegations to be untrue, the certification requirement is essential to "guard against the removal of an unbiased judge through the filing of a false affidavit." *Loving Spirit Found.*, 392 F.3d at 496. The certification requirement therefore serves as a "check on abuse of the recusal process," assuring the Court that the statements in the affidavit are made in good

faith. *Id.* Given the importance of the certification requirement, the failure to comply with this requirement is not simply a procedural error. *United States v. Miller*, 355 F. Supp. 2d 404, 405-06 (D.D.C. 2005) ("failure to make this certification is grounds for denying the motion").

Here, although Plaintiff has submitted a certification of good faith by her counsel of record, her counsel has certified therein only that the "motion is being filed in good faith;" counsel has not similarly certified that the accompanying Affidavit and the substantive factual allegations contained therein have also been filed in good faith. *See* Pl.'s Mot. to Disqualify at 1-2. Nor does counsel's Affidavit itself contain any language certifying that the factual allegations set forth therein have been submitted in good faith. *See generally* Aff. Plaintiff therefore has not complied with section 144's requirement that she present a signed "certificate stating that *both* the motion and *declaration* are made in good faith." *Loving Spirit Found.*, 392 F.3d at 496 (emphasis added). Accordingly, given that Plaintiff's Affidavit in support of her Motion was submitted by her counsel of record, rather than a party to the litigation, and does not comply with the certification requirements of section 144, her Motion to Disqualify must be denied for these reasons alone.

### B.    *Plaintiff's Motion to Disqualify Pursuant to Section 144 is Untimely*

The Motion to Disqualify must also be denied as untimely. As observed above, the timeliness requirement is "[c]rucial to the integrity of the judicial process" and is intended to ensure that a party is not simply filing the motion on the basis of subsequent unfavorable rulings or treatment by the Court. *Spirit Loving Found.*, 392 F.3d at 492. In this case, the Court finds that Plaintiff's Motion to Disqualify was not filed at the "earliest moment," and therefore fails for this reason as well. *See id.* (affirming dismissal of untimely motion to disqualify under section

144).

     1.     <u>The Motion is Untimely to the Extent it is Premised on the Court's Appointment to the Federal Bench by Former President Clinton, Alleged Political Affiliation, and Judicial Rulings in Other Litigation</u>

Plaintiff contends that disqualification is warranted in part based on: (a) the Court's appointment to the federal bench by former President Clinton, of whom her counsel is allegedly critical; (b) the undersigned's alleged affiliation with the Democratic party, of which her counsel is also allegedly critical; and (c) certain judicial decisions issued by the Court in *Klayman v. Judicial Watch, Inc.*, Civ. Act. No. 06-670, an unrelated civil action in which Plaintiff's counsel of record, Larry Klayman, is the party plaintiff. As the Court demonstrates below, Plaintiff and her counsel knew of each of these alleged bases of prejudice and/or bias at the time the case was reassigned to this Court on May 25, 2010, or very soon thereafter. Any motion for disqualification based on these allegations therefore should have been filed immediately upon, or shortly after, reassignment of this case to the Court. Plaintiff instead waited more than three months to file the instant Motion to Disqualify pursuant to section 144. As she offers no explanation for this delay of three months, the Motion is clearly untimely. *See United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993) (finding section 144 motion untimely where filed two months after discovery of prejudice); *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 334 (2d Cir. 1987) (finding section 144 motion untimely where party waited two months after discovery of prejudice); *Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 871-72 (9th Cir. 1991) (delay of six weeks rendered section 144 motion untimely).

First, Plaintiff's counsel, if not Plaintiff herself, was aware as early as May 25, 2010, when this case was initially reassigned by the Calendar Committee to this Court, that the

undersigned had been appointed to the federal bench more than 13 years ago by former President Clinton. Indeed, this was one of the many grounds asserted in a motion for disqualification filed by Plaintiff's attorney in the *Klayman* matter, which motion was filed well before the instant case was filed. *See* Civ. Act. No. 06-670, Docket No. [298] (filed on Feb. 20, 2009). Accordingly, it is undisputed that Plaintiff's counsel was aware of this fact at the time this action was filed.

Second, the events identified by Plaintiff's counsel in the section 144 Affidavit and relied upon to support Plaintiff's claim of bias arising from the undersigned's alleged association with the Democratic party occurred as far back as the 1990's. *See* Aff. ¶ 13 (discussing events surrounding the undersigned's nomination to the federal bench and certain other events that occurred during the Clinton administration). Similarly, the events identified in the Affidavit underlying the allegation that Plaintiff's counsel has been critical of both the Democratic party and Democratic officials as well as this Court, therefore causing the Court to allegedly harbor a prejudice against counsel, also occurred as far back as the 1990's, *see id.* (describing counsel's activities against and criticism of the Clinton administration), with the most recent event allegedly occurring in October 2009, *see id.* (indicating that counsel released a book critical of the judiciary, including the undersigned, in October of 2009).

Third, as set forth in her counsel's Affidavit, Plaintiff complains of decisions in the *Klayman* matter dating as far back as 2008, with the most recent substantive ruling identified in the Affidavit having been issued in June 2009, more than a year prior to the filing of the instant Motion. *See* Aff. ¶ 13. In particular, her counsel identifies the following decisions by this Court

as demonstrating bias and/or prejudice against him, listed below in chronological order:[2]

(a) the Court's decision denying Klayman's request for a protective order, Aff. ¶ 13, which appears to refer to the Court's April 2, 2008 Order affirming Magistrate Judge Alan Kay's decision denying a motion by Klayman to quash certain subpoenas or, alternatively, for a protective order, *see* Civ. Act. No. 06-670, Apr. 2, 2008 Order, Docket No. [134];

(b) the Court's discovery rulings permitting "discovery into [Klayman's] divorce," Aff. ¶ 13, which appears to refer to the Court's May 28, 2008 Order overruling Klayman's objections to a discovery ruling issued by Magistrate Judge Kay in this case, *see* Civ. Act. No. 06-670, May 28, 2008 Order, Docket No. [185]; *see also Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98, 102-04 (D.D.C. 2009) (discussing in detail the Court's rulings regarding defendants' request to take discovery from Klayman's ex-wife);

(c) the Court's order denying Klayman's multiple requests for an extension of time to file his summary judgment briefing, Aff. ¶ 13, which appears to refer to a series of Orders issued by the Court in late December 2008 and early January 2009, *see* Civ. Act. No. 06-670, Dec. 18, 2008 Min. Order; Dec. 23, 2008 Min. Order; Dec. 30, 2008 Order, Docket No. [293]; Jan. 7, 2009 Min. Order; *see also Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98, 105-09 (D.D.C. 2009) (discussing in detail the Court's rulings regarding Klayman's multiple requests for extensions of time);

(d) the Court's ruling "dismiss[ing] most of [Klayman's] case and barr[ing] [him] from presenting evidence on damages," Aff. ¶ 13, which appears to reference the Court's June 25, 2009 Order and Memorandum Opinion resolving the parties' cross-motions for summary judgment, *see* Civ. Act. No. 06-670, June 25, 2009 Mem. Op., Docket No. [319]; and

(e) the Court's decision denying Klayman's initial motion for disqualification, Aff. ¶ 13, which was issued on June 25, 2009, *see* Civ. Act. No. 06-670, June 25, 2009 Mem. Op., Docket No. [315].

---

[2] The Court notes that the Affidavit fails to specifically identify by docket number or date the particular orders in the *Klayman* case of which Plaintiff now complains. The public docket in the *Klayman* action, which was initially filed more than four years ago, contains in excess of 350 entries at present. The failure to properly cite to the record or to identify the rulings of which Plaintiff now complains has significantly and needlessly increased the difficulty in determining which of the hundreds of rulings in this case are now at issue. Nonetheless, to the extent the Court has been able to determine which of its rulings are likely described by the Affidavit, the Court has identified these decisions above.

Thus, each of the Court's rulings in the *Klayman* matter of which Plaintiff now complains were issued at least 11 months prior to the date on which the instant action was first assigned to this Court on May 25, 2010.

It is therefore clear that Plaintiff's counsel — on whose Affidavit the Motion to Disqualify is based — knew of each of these alleged sources of bias at the time this case was initially assigned to the Court. Indeed, as noted above, Plaintiff's counsel had moved for disqualification of this Court in the *Klayman* matter in February of 2009 — well before the instant action was filed — based on these very same allegations of bias. *See* Civ. Act. No. 06-670, Docket No. [298] (filed on Feb. 20, 2009). There is no doubt, then, that counsel was aware of these alleged sources of bias at the time this action was filed. That Plaintiff herself was also aware of these allegations is confirmed by her Motion to Reassign, which was filed on her behalf on June 9, 2010, and which sought reassignment of this case based largely on the *same* allegations of bias that underlie her current Motion to Disqualify. *See* Pl.'s Mot. to Reassign, Docket No. [42]. Accordingly, it is apparent that both Plaintiff and her counsel were aware of these alleged sources of bias at the time this case was first assigned to this Court or shortly thereafter. Yet Plaintiff did not file a motion for disqualification under section 144 until July 26, 2010 — i.e., two months after the case was assigned to this Court and six weeks after the Motion to Reassign was filed. The Motion is clearly untimely.

Significantly, the Court notes that the instant Motion to Disqualify was not filed until more than two weeks *after* the Court issued its decision denying her request for a preliminary injunction. That Plaintiff was aware of these alleged sources of bias but delayed filing the instant Motion until after she received a ruling on her request for injunctive relief reinforces the

untimely nature of her Motion.  *Cf. S.E.C. v. Grossman*, 887 F. Supp. 649, 658 (S.D.N.Y. 1995)

(finding motion to disqualify untimely where party "chose to delay any motion and gamble" on

outcome of substantive rulings); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1296

(9th Cir. 1992) (affirming denial of motion to disqualify under section 455 where "unexplained

delay suggest[ed] that the recusal statute [was] being misused for strategic purposes").

Finally, the Court notes that its finding of untimeliness is further supported by the fact

that Plaintiff continued to actively participate in the present litigation despite the occurrence of

the events of which she now complains.  In particular, in the intervening time period since

Plaintiff would have first become aware of the Court's alleged bias stemming from the

undersigned's purported political affiliations and its judicial rulings in the *Klayman* matter, the

parties have briefed both Plaintiff's request for a temporary restraining order and a preliminary

injunction and the Court has ruled on the merits of both motions.  Plaintiff's continued

participation in each of these substantive stages of litigation further counsels against

disqualification.  *See Spirit Loving Found.*, 392 F.3d at 493 ("courts have observed that filing

motions between the events complained of and submission of the affidavit weighs heavily against

a finding of timeliness").

> 2.  The Motion is Also Untimely to the Extent it is Premised on the Court's
>     Judicial Rulings in the Instant Case

Plaintiff also contends that the Court's rulings in this case warrant disqualification under

section 144.  According to Plaintiff, notwithstanding the Court's allegedly long-standing bias

against her counsel of record — which alleged bias is the principal impetus for the present

Motion to Disqualify —  the present Motion is timely filed because the Court's rulings in this

case demonstrate that such bias has "recently . . . become much more acute."  Aff. ¶ 4.  As

explained above, however, the Court's most recent decision in this case denying Plaintiff's request for a preliminary injunction was issued on July 7, 2010 — more than two-and-a-half weeks prior to the filing of the instant Motion to Disqualify. Once again, Plaintiff offers no explanation for this delay, particularly where the majority of the events on which she bases the instant Motion occurred well before this case was even filed. In such circumstances, D.C. Circuit precedent counsels that an unexplained delay of this length renders the filing of the Motion to Disqualify untimely. *See Smuck v. Hobson*, 408 F.2d 175, 183 (D.C. Cir. 1969) (expressing "serious doubt" about the timeliness of an affidavit based on remarks made by the judge "more than two weeks before" and a law review published by the judge "more than a year" earlier). *See also In re Martin-Trigona*, 573 F. Supp. 1237, 1244-45 (D. Conn. 1983) (12-day delay from time movant indicated probability of recusal motion to time motion was actually filed rendered motion untimely); *Bumpus v. Uniroyal Tire Co.*, 385 F. Supp. 711, 712 (E.D. Pa. 1974) (finding section 144 motion and affidavit untimely where based on events occurring "from two weeks to as far back as two months before"). The Court therefore finds that Plaintiff's Motion to Disqualify under section 144 is untimely and must be denied for this reason as well.

C. *The Facts Set Forth in the Affidavit are Legally Insufficient to Warrant Disqualification*

As discussed above, the Affidavit submitted in support of Plaintiff's Motion to Disqualify is both legally deficient and untimely, and Plaintiff's Motion must be denied for these reasons alone. Nonetheless, cognizant that section 455 imposes a duty upon this Court to consider recusal *sua sponte*, *see United States v. Barrett*, 111 F.3d 947, 955 (D.C. Cir. 1997), the Court shall proceed to consider the merits of the present Motion to Disqualify, notwithstanding the deficiencies in the Affidavit. Ultimately, for the reasons set forth below, the Court finds that

Plaintiff's Motion to Disqualify must also be denied because the facts set forth in the supporting

Affidavit, even if accepted as true, are legally insufficient to demonstrate actual bias warranting

disqualification under section 144. In addition, after conducting its own independent review of

the record in this case, including Plaintiff's present Motion and Affidavit, the Court is satisfied

that no reasonable and informed observer would question this Court's impartiality. Indeed, the

Court has already ruled that allegations of bias based on the Court's appointment by former

President Clinton, alleged political affiliations, and the Court's judicial rulings are legally

insufficient to warrant or justify disqualification. *See Sataki v. Broadcasting Board of*

*Governors*, __ F. Supp. 2d __, 2010 WL 2679893 (D.D.C. July 7, 2010) (denying Plaintiff's

Motion to Reassign, to the extent it may be construed as a motion for recusal under section 455).[3]

Plaintiff offers no new factual or legal support that would suggest the Court's prior rulings on

---

[3] While the Court construed Plaintiff's Motion to Reassign as seeking disqualification under 28 U.S.C. § 455(a)-(b)(1) — and the present motion by contrast focuses on 28 U.S.C. § 144 — the substantive standard for recusal based on alleged bias under the two sections is largely the same. Section 455(b)(1), like section 144, provides for recusal only where there is evidence of *actual* bias. *See Liteky*, 510 U.S. at 54; *see also* 28 U.S.C. § 455(b). Section 455(a) is somewhat broader in that it requires only a reasonable *appearance* of bias. *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004); *cf. Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987) (recognizing that, while section 455(a) provides "broader grounds for disqualification than . . . § 144," "when, as here, a party has not alleged any grounds for recusal other than those relating to the district court's alleged bias or prejudice, those broader grounds are not implicated"). However, both statutes require proof of *extrajudicial* bias, *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1301 (D.C. Cir. 1988) ("It is well settled that a motion for recusal under 28 U.S.C. § 144 or § 455, must be based upon prejudice from an extra-judicial source."), and both sections apply an objective standard, *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) ("The substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455 is the same: '[W]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'") (quoting *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986)). Accordingly, a failure to show disqualification as required under section 455(a)-(b) invariably results in a failure to show disqualification as required under section 144.

this point were in error, and for good reason. The case law is clear that neither the Court's judicial rulings nor its alleged political affiliations support disqualification.

> 1. The Motion to Disqualify Focuses Solely on the Court's Alleged Bias Towards Counsel and Not Towards Plaintiff

At the outset, the Court emphasizes that the allegations of bias set forth in counsel's Affidavit focus solely on the Court's alleged bias towards counsel, and not towards Plaintiff herself. That is, Plaintiff's Motion to Disqualify is premised solely on the allegation that the Court's alleged bias or prejudice against her attorney, Larry Klayman, has been transferred to her as Klayman's client and has rendered the Court unable to act impartially towards her as a party in this litigation. Plaintiff has not cited any case law or other legal authority from this Circuit addressing the question of whether a court's alleged bias against an attorney, rather than the client, may be a sufficient grounds for disqualification, and the Court itself is aware of none. The question therefore appears to be an issue of first impression in the D.C. Circuit. Plaintiff has, however, cited several cases from other jurisdictions in which courts have held that bias against an attorney may be imputed to his client. *See* Aff. ¶ 8.

While Plaintiff is correct that some courts have recognized that bias towards an attorney *may* be imputed to a client in limited circumstances, even these courts have overwhelmingly cautioned that bias towards an attorney is only rarely sufficient to support disqualification. *See, e.g.*, *Panzardi-Alvarez*, 879 F.2d 975, 984 (1st Cir. 1989) ("As a general rule, bias against the party must be shown and it is insufficient to rely on clashes between the court and counsel as the basis of a disqualification motion. There are, however, some extreme cases in which the judge's attitude toward a party's attorney will be so hostile that it would be reasonable to conclude that the judge will be unable to remain impartial as to the client.") (internal citations and quotation

marks omitted); *In re Beard*, 811 F.2d 818, 830 (4th Cir. 1987) (" For the bias against the attorney to require disqualification of the trial judge, it must be of a continuing and personal nature and not simply bias against the attorney because of his conduct."); *Conklin v. Warrington Twshp.*, 476 F. Supp. 2d 458 (M.D. Pa. 2007) ("bias against an attorney may require disqualification . . . where the hostility is so virulent and of such magnitude that it prejudices the judge against the attorney's client") (internal quotation marks omitted). Defendants for their part have not specifically disputed that bias towards an attorney may in some instances be imputed to the client. *See generally* Defs.' Opp'n. Ultimately, given the parties' apparent agreement on this point and the Court's finding below that Plaintiff has failed to proffer sufficient facts demonstrating bias or prejudice on the part of the Court towards her attorney, the Court need not resolve this issue. Even assuming that a court's demonstrated bias towards an attorney may in certain rare circumstances be transferred to the client, Plaintiff in this case has *not* shown that the Court is biased or prejudiced against her attorney — let alone that any such alleged prejudice is of such a nature that it may be imputed to her as the client. As is explained below, Plaintiff's allegations of bias based on the Court's appointment by former President Clinton, alleged political affiliations, and the Court's judicial rulings are legally insufficient to warrant or justify disqualification.

2.     The Court's Judicial Rulings Do Not Form a Proper Basis for Disqualification

As the Court has previously made clear, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Such rulings by themselves "cannot possibly show reliance upon an extrajudicial source" and "can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no

extrajudicial source is involved." *Id.* Here, while Plaintiff generally complains that certain

rulings issued by the Court demonstrate bias, she has failed to identify with the required degree

of particularity any *extrajudicial* source of bias. *See generally* Aff. "[T]o be disqualifying, the

alleged bias usually 'must stem from an extrajudicial source and result in an opinion on the

merits on some basis other than what the judge learned from his participation in the case.'"

*Robertson*, 691 F. Supp. 2d at 78 (quoting *Grinnell Corp.*, 384 U.S. at 583); *see also Liteky*, 510

U.S. at 554 (predispositions developed during proceedings are rarely sufficient); *Liberty Lobby,*

*Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1301 (D.C. Cir. 1988) ("It is well settled that a motion

for recusal under 28 U.S.C. § 144 or § 455 must be based upon prejudice from an extra-judicial

source."). Plaintiff's conclusory allegations and statements of opinion that the Court "has

demonstrated an extra-judicial bias and prejudice" against her attorney are wholly insufficient on

this point. *See Hanrahan*, 248 F. Supp. at 474 (the affidavit "must state facts as opposed to

conclusions" and must do so with "particularity"); *cf. Karim-Panahi v. U.S. Congress*, No. 03-

5186, 2004 WL 1588167, at *4 (D.C. Cir. Jul. 14, 2004) (per curiam) (holding that under section

455, "[a] judge should not recuse himself based upon conclusory, unsupported or tenuous

allegations").[4] Accordingly, while Plaintiff's dissatisfaction with the Court's rulings may

provide a proper ground for appeal, her mere disagreement with the Court's judicial rulings does

_____

[4] The only specific allegation that could arguably be construed as asserting an extrajudicial source of bias, as is required under section 144, is counsel's assertion that he published a book in October of 2009, in which he was "critical of [the undersigned], among other jurists and politicians and media figures." Aff. ¶ 6. Importantly, however, counsel does *not* allege that the Court itself was actually aware of the existence of this book or the allegedly critical comments contained therein. *See id.* Therefore, even assuming the truth of the allegations in the Affidavit, as the Court must, there is no claim that this Court had knowledge of this book or any of the statements allegedly made therein.

not provide a proper ground for recusal. *See Liteky*, 510 U.S. at 540; *Spirit Loving Found.*, 392 F.3d at 494 ("Indeed, we have found no case where this or any other federal court recused a judge based only on his or her rulings."); *Karim-Panahi*, 2004 WL 1588167, at *4 (where plaintiff has failed to point "to anything that would suggest that [the Court] has formed an opinion on some basis other than her participation in this case," recusal is inappropriate).

The Court has previously addressed in great detail many of Plaintiff's complaints regarding the Court's rulings in the unrelated *Klayman* matter, and therefore need not do so again here, as it is clear that such rulings do not constitute a valid basis for recusal. *See Klayman v. Judicial Watch, Inc.,* 628 F. Supp. 2d 98, 101-10 (D.D.C. 2009). To the extent Plaintiff complains of the Court's decisions in the instant action, the Court notes that she has since voluntarily dismissed nearly all of the substantive claims in this case, *see* Civ. Act. No. 10-534, Docket No. [67] (Notice of Voluntary Dismissal), and has chosen not to appeal the Court's ruling denying her request for a preliminary injunction. The D.C. Circuit has cautioned that under such circumstances, "even if a particular ruling or a series of rulings revealed bias, we doubt very much that a recusal motion would be proper where, as here, the movant could have appealed the challenged decisions but failed to do so." *Spirit Loving Found.*, 392 F.3d at 494.

Thus, while it is clear that Plaintiff is displeased with the Court's rulings in the instant action, her disagreement with the Court's decisions does not provide a proper ground for recusal. *Liteky*, 510 U.S. at 555. As the D.C. Circuit has aptly observed, "if disqualification were required 'merely as a result of counsel's disagreement with judicial conclusions reached in the course of litigation, the judicial system would grind to a halt.'" *Loving Spirit Found.*, 392 F.3d at 494 (quoting *Barnett v. City of Chicago*, 952 F. Supp. 1265, 1269 (N.D. Ill. 1998)). Plaintiff's

21

allegations of bias premised on the Court's judicial rulings are therefore legally insufficient and do not warrant disqualification.[5]

### 3. The Court's Alleged Political Affiliations and Appointment to the Federal Bench by Former President Clinton Do Not Form a Proper Basis for Disqualification

Finally, as the Court has previously made clear, the fact that the undersigned was appointed to the federal bench by former President Clinton, of whom Plaintiff's attorney has allegedly been critical in the past, does not warrant or justify disqualification. *See Sataki v. Broadcasting Board of Governors*, __ F. Supp. 2d __, 2010 WL 2679893, at *4-5 (D.D.C. July 7, 2010). Nor does the claim that the Court is allegedly connected to and associated with the Democratic party, even if assumed true, support recusal of this Court. The case law is clear that recusal is not warranted in this circumstance. *See id.* ("Plaintiff's unfounded allegations of political bias do not warrant or require recusal in the instant case."); *see also Karim-Panahi*, 2004 WL 1588167, at *4 (affirming lower court's denial of motion for recusal based on allegations that the judge was "biased because of her 'political-religious connections' and her alleged loyalty to those who selected, confirmed and appointed her"); *see also MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998), *cert. denied*, 525 U.S. 874 (1998)

---

[5] Cognizant that the Court is required to accept the allegations in the section 144 Affidavit as true in evaluating the legal sufficiency of the Motion to Disqualify, the Court has not addressed herein the actual merits or veracity of such allegations regarding the Court's prior judicial rulings. The Court only pauses here briefly to emphasize that its silence should not be read as agreement with Plaintiff's characterization of the record in this case; to the contrary, review of the Court's rulings demonstrates that Plaintiff's Motion to Disqualify is premised on a flawed and wholly inaccurate characterization of this Court's prior judicial decisions.

(plaintiff's[6] allegation that "a judge is not impartial solely because an attorney is embroiled in a controversy with the administration that appointed the judge" is insufficient grounds for recusal). As the Second Circuit has persuasively stated,

> Judges generally have political backgrounds to one degree or another but must be presumed, absent more, to be impartial. At least in the federal system, judges separate themselves from politics when going on the bench, and their life tenure reduces any felt reliance on political patrons. Indeed, a suggestion of partiality based on the appointing administration may often be a double-edged sword. If a Democratic appointee's impartiality toward lawyers publicly identified as active Republicans may be questioned, a Republican appointee's impartiality toward lawyers' adversaries might similarly be questioned on the ground that a Republican judge might favor the Republican lawyers.

*MacDraw*, 138 F.3d at 38. Indeed, courts have held that recusal is not warranted even when the President responsible for nominating the judge is actually a *party* to the litigation. *See, e.g.*, *In re Executive Office of President*, 215 F.3d 25, 25 (D.C. Cir. 2000) ("Hearing a case involving the conduct of the President who appointed me will not create in reasonable minds, with knowledge of all relevant circumstances that a reasonable inquiry would disclose, a perception that [my] ability to carry out judicial responsibilities with integrity, impartiality, and competence [would be] impaired.") (internal citation and quotation marks omitted). *Cf. Reddy v. O'Connor*, 520 F. Supp. 2d 124, 128 (D.D.C. 2007) (in a case involving Chief Justice John Roberts, concluding that "no reasonable and informed observer would question the impartiality of the undersigned based on the Chief Justice's appointment of the undersigned [Judge John D. Bates] to the [Foreign Intelligence Surveillance Court]."). Accordingly, neither the fact that the undersigned was appointed by the former Clinton administration nor the Court's alleged connection to the

---

[6] The Court notes that Klayman was counsel of record for plaintiff in this case as well. *See MacDraw*, 138 F.3d at 35.

Democratic party warrant or require recusal in the instant case.[7]

## III. CONCLUSION

In conclusion, the Court finds that Plaintiff has failed to submit a "timely and sufficient affidavit" as is required to support disqualification under 28 U.S.C. § 144. First, the Affidavit submitted by her counsel of record does not comply with the statutory requirements of section 144 and is therefore deficient. Second, the Motion to Disqualify and supporting Affidavit were not timely filed at the "earliest moment." Third and finally, the factual allegations set forth in the Affidavit, even if true, are legally insufficient to support a finding that the Court has an actual extrajudicial bias or prejudice. The Affidavit largely consists of conclusory assertions and opinions, which lack the necessary degree of particularity required in a section 144 affidavit. Moreover, neither of the grounds asserted in the Affidavit warrant or require disqualification under section 144. It is well settled that complaints regarding the Court's judicial rulings in this case as well as in the separate, unrelated *Klayman* matter do not provide a proper ground for recusal. Although it is clear that Plaintiff and her counsel are displeased with the substance of

---

[7] The Court notes that Plaintiff's counsel also alleges in the Affidavit that recusal is warranted because the undersigned's spouse, also a lawyer, "played a role which was useful to President Clinton during the infamous Monica Lewinsky scandal." Aff. ¶ 6. It is entirely unclear from her counsel's vague and conclusory assertions how this alleged fact, even if true, would tend to foster or create an actual bias on the part of the undersigned in this case. Nor has Plaintiff provided any legal support for her apparent claim that recusal is warranted and necessary where, a decade or more ago, the presiding judge's spouse represented an individual, who is not a party to the instant litigation, in a matter wholly unrelated to the current lawsuit. Accordingly, as Plaintiff alleges no financial or personal concerns implicated by the representation nor provides any facts or evidence that would cause a reasonable and informed observer to question this Court's impartiality, the Court finds that this claim, even if true, is legally insufficient to support disqualification. *Cf. Microsoft Corp. v. United States*, 530 U.S. 1301, 1301 (2000) (order by Chief Justice William H. Rehnquist denying motion to recuse where his son's law firm represented a party but his personal and financial concerns were unaffected).

certain of those decisions, disqualification is not required merely because the parties disagree with the Court's judicial rulings and Plaintiff has failed to identify with particularity any alleged extrajudicial source of bias. It is also equally established that disqualification is not warranted or required merely because the undersigned was appointed to the federal bench by former President Clinton and is alleged to have connections to and associations with the Democratic party.

Accordingly, consistent with its obligation to determine in the first instance whether the Motion and supporting Affidavit are timely filed and legally sufficient to require disqualification, the Court finds that the instant Motion to Disqualify is both untimely and legally insufficient. Disqualification under 28 U.S.C. § 144 is therefore neither required nor warranted. The Court is also satisfied, upon its own independent review of the record, that no reasonable and informed observer would question this Court's impartiality. Plaintiff's [66] Motion to Disqualify this Court pursuant to 28 U.S.C. § 144 is DENIED. An appropriate Order accompanies this Memorandum Opinion.


Date:   October 13, 2010

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge